Bobby HARDWICK, Petitioner-Appellant,

v.

Ollie DOOLITTLE, Jailer and William Anderson, Sheriff, Respondents-Appellees.

No. 76–1065.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1977.

Rehearing and Rehearing En Banc Denied Oct. 25, 1977. See 561 F.2d 630.

---

A. Russell Blank, Atlanta, Ga., for petitioner-appellant.

Richard L. Powell, Robert C. Daniel, Jr., Richmond County Atty., Augusta, Ga., for respondents-appellees.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

Twenty two years before Congress in 1867 first authorized federal courts to entertain writs of habeas corpus on behalf of state prisoners, *Ex parte Partington,* 13 M. & W. 679, 683–84, 153 Eng.Rep. 284, 286 (Ex. 1845), described a particularly persistent habeas petitioner:

"This case had already been before the Court of Queen's Bench, on the return of a habeas corpus, and before my Lord Chief Baron at chambers, on a subsequent application for a similar writ. In both instances the discharge was refused. The defendant, however, has a right to the opinion of every court as to the propriety of his imprisonment, and therefore we have thought it proper to examine attentively the provisions of the statute, without considering ourselves as concluded by these decisions."

Appellant Hardwick has been no less persistent: he has filed more than a score of actions contesting his conviction and protesting the conditions of his confinement. *Cf. Cox v. Hakes,* 15 A.C. 506, 527 (H.L. 1890) ("A person detained in custody might thus proceed from court to court until he obtained his liberty."). Although Hardwick has been partially successful, *see Hardwick v. Ault,* 517 F.2d 295 (5th Cir. 1975); *Hardwick v. Ault,* 515 F.2d 1181 (5th Cir. 1975), he still stands convicted of two counts of armed robbery and two counts of aggravated assault, for which he is currently serving two life sentences and two ten-year sentences which are to run consecutively.

Following a December 19, 1969 daytime robbery of the C&S Bank in Augusta, Georgia, Hardwick and a codefendant were indicted on one count of armed robbery and one count of aggravated assault. Both men had been arrested within minutes of the robbery after a chase/shootout through downtown Augusta. When he was apprehended, Hardwick had the proceeds of the robbery (over $43,000) in his possession and was armed with a .38 caliber revolver. He pleaded not guilty to both counts of the indictment.

On January 8, 1970, Hardwick preempted his state trial scheduled for that day by filing a petition for removal in the United States District Court for the Southern District of Georgia, invoking that court's jurisdiction pursuant to the civil rights removal statute, 28 U.S.C. § 1443. Notwithstanding the command of 28 U.S.C. § 1446(e) that "the State court shall proceed no further unless and until the case is remanded," the Georgia tribunal permitted the prosecution to continue. A jury convicted Hardwick on both counts and sentenced him to life imprisonment on the armed robbery count and to ten years on the aggravated assault count, the sentences to be served consecutively.

The United States district court ultimately ordered a remand on January 16, 1970, but later held on habeas that the Georgia court had no jurisdiction to try Hardwick while his case was pending in federal court

and that therefore the conviction so obtained was void. The district court ordered that Hardwick be retried or released.

On September 12, 1972, the Georgia trial court called Hardwick's case for retrial on the original indictment. Hardwick entered a special plea of insanity which was tried to a jury that returned a verdict against the special plea. The next day Hardwick filed a second petition for removal to the federal district court, but the case was remanded. *Georgia v. Hardwick,* Cr. No. 5521 (S.D.Ga. December 22, 1972), *aff'd,* 481 F.2d 1402 (5th Cir. 1973), *cert. denied,* 414 U.S. 1074, 94 S.Ct. 590, 38 L.Ed.2d 481 (1973). Following this second remand, Hardwick's case was scheduled for trial on January 8, 1973 but continued through February due to illness of defense counsel. On February 20, 1973, the prosecutor obtained a superseding indictment, charging Hardwick alone with two counts of armed robbery and two counts of aggravated assault. Following a renewed special plea of insanity which was denied, Hardwick was tried on the second indictment on March 13, 1973. He stood mute. The jury convicted him on all four counts, and sentenced him to serve consecutively two life sentences and two ten-year terms.

Hardwick now appeals from the district court's denial of his petition for habeas corpus and from that court's order enjoining him "from raising again in any court of the State of Georgia, or in the United States District Courts for the Northern, Middle, and Southern Districts of Georgia, the issues resolved adversely to petitioner in this *habeas corpus* proceeding." The state not only argues that the actions of the district court should be affirmed, but also asks this Court to extend the injunction to "further restrain and enjoin [Hardwick] from litigating any further issues concerning his conviction and confinement."

## I. RES JUDICATA AND HABEAS CORPUS

We consider the propriety of the injunction first, because regardless of whether we affirm or reverse the district court's disposi-

tion of the merits of this petition, the injunction operates as a continuing restraint upon appellant's ability to press the claims raised in the petition. We assume *arguendo* that Hardwick has made rather prodigal use of the privilege of the Great Writ. The question, then, is whether abuse of the opportunity to seek habeas corpus relief is adequate justification for an injunction forbidding relitigation of previously raised claims.

■ In issuing the injunction, the district court relied on its All Writs authority, *see* 28 U.S.C. § 1651, as interpreted by *Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 441 F.2d 631 (5th Cir. 1971), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255, and *International Assoc. of Machinists & Aerospace Workers v. Nix,* 512 F.2d 125 (5th Cir. 1975). In *Kinnear-Weed,* we held that the district court had properly employed All Writs authority to enjoin a private party from further prosecuting issues in a patent infringement suit that had been fully and fairly litigated in the district court and on appeal. We noted, however, that "the injunction does no more than embody the principles of res judicata and collateral estoppel." 441 F.2d at 637. In the *Nix* case, this Court upheld the use of All Writs authority to prevent private relitigation in state court of labor law claims fully and fairly decided in federal court. At the same time, we were careful to point out that the scope of an order prohibiting relitigation must be equal to, but not more than, the scope of the doctrines of res judicata and collateral estoppel. 512 F.2d at 130–132. The lesson of these two cases is that the boundaries of res judicata and collateral estoppel may be protected by an injunction and when necessary to prevent harassment of successful litigants. *Accord, Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84 (5th Cir. 1977).

■ Neither case, however, is authority for an injunction prohibiting relitigation of claims on habeas corpus, because the doctrines of res judicata and collateral estoppel are not applicable in habeas proceedings. At common law, there was no limit on the number of times a prisoner might attempt to obtain relief via habeas corpus. *Sanders v. United States,* 373 U.S. 1, 7–14, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). And in the landmark case of *Salinger v. Loisel,* 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924), the Supreme Court confirmed that no such limitation would be enforced in the federal courts. Salinger had previously litigated the merits of his claim in one habeas proceeding and had lost. When he raised the same issue in two separate and additional habeas actions, the Government contended that Salinger's defeat in the first suit barred reconsideration of the issue under the principles of res judicata. A unanimous Supreme Court held:

> "At common law the doctrine of res judicata did not extend to a decision on habeas corpus refusing to discharge the prisoner. . . . [T]his Court has conformed to [that rule] and thereby sanctioned it, although announcing no express decision on the point. . . . we regard the rule as well established . . . . [E]ach application is to be disposed of in the exercise of a sound judicial discretion."

265 U.S. at 230–31, 44 S.Ct. at 521.

But the *Salinger* Court also held that habeas courts need give no more than summary consideration to repetitive petitions, *see* 265 U.S. at 231–32, 44 S.Ct. 519, and applied that rule the same day in the case of *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924). In *Wong Doo* the petitioner sought habeas corpus on a ground that he had alleged in a prior petition but failed to prove at a hearing. The Court held it was proper to deny relief where

> "[t]he petitioner had full opportunity to offer proof of [the claim] at the hearing on the first petition; and, if he was intending to rely on that ground, good faith required that he produce the proof then. To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of *habeas corpus.*"

265 U.S. at 241, 44 S.Ct. at 525.

■ The Supreme Court's more recent decisions make it clear that a state prisoner is not limited as to the number of times he may seek habeas relief in the federal courts. *See, e. g., Preiser v. Rodriguez,* 411 U.S. 475, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963) ("Simply because detention obtained [in contravention of the constitution] is intolerable, the opportunity for redress, which presupposes the opportunity to be heard, to argue and present evidence, must never be totally foreclosed."); *Fay v. Noia,* 372 U.S. 391, 422–23, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). When a prisoner's actions constitute an abuse of the writ, the remedy is to deny him relief on subsequent applications, not to enjoin him from bringing those applications. *See Sanders v. United States,* 373 U.S. 1, 10–11, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

This Court has consistently interpreted the habeas corpus statutes as imposing no numerical limits on a state prisoner's access to the federal courts. *See, e. g., Weaver v. Texas,* 474 F.2d 1135, 1138 (5th Cir. 1973); *Harris v. Wainwright,* 470 F.2d 190, 191 (5th Cir. 1972); *Pritchard v. Henderson,* 440 F.2d 660, 660–661 (5th Cir. 1971); *accord, Wilwording v. Swenson,* 502 F.2d 844, 848–49 (8th Cir. 1974). Instead, we have held that summary consideration of a petition is the appropriate remedy when an applicant seeks to relitigate a claim. *See, e. g., Boles v. Beto,* 379 F.2d 614, 614 (5th Cir. 1967); *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1957); *accord, Tannehill v. Fitzharris,* 451 F.2d 1322, 1323 (9th Cir. 1971). In these circumstances, to equate the filing of successive petitions with an "abuse" of habeas is to misunderstand the extraordinary nature of the writ. The doors of the federal courts are never closed to habeas petitioners, but importunate claims of state prisoners "need not be entertained," section 2244(b) tells us, "unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." This power of sum-

mary disposition furnishes ample defense against paper bombardments. An injunction, backed by the contempt sanction, is not only unnecessary; it is also undesirable because it may deter a prisoner from bringing other, meritorious claims or from working to substantiate a previously raised claim. *Cf. Farnsworth v. Zerbst,* 98 F.2d 541, 543 (5th Cir. 1938) (denying relief because facts did not prove allegation, but recognizing petitioner's right to make "a better presentation of it on another petition, since res judicata is not strictly applied in habeas corpus cases.").

We hold that the injunction must be vacated in its entirety. All Writs authority is, after all, limited to the issuance of writs "agreeable to the usages and principles of law," 28 U.S.C. § 1651, and in determining that compatibility, federal courts "look first to the common law," *United States v. Hayman,* 342 U.S. 205, 221 n. 35, 72 S.Ct. 263, 273, 96 L.Ed. 232 (1952). Common law practice, Supreme Court decisions, and the habeas corpus statutes as interpreted by this Court compel the conclusion that a federal court injunction barring future habeas petitions cannot be sustained without risking a violation of the Suspension Clause. *Cf. Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803) (despite statute authorizing Supreme Court to issue writs of mandamus, Court could not issue writ where to do so would violate constitutional allocation of original and appellate jurisdiction).

## II. REINDICTMENT, RETRIAL, AND RESENTENCING

When the State of Georgia tried and convicted appellant while his first removal petition was pending, it contravened the requirement of the federal removal statutes that "the state Court shall proceed no further unless and until the case is remanded," 28 U.S.C. § 1446(e). Consequently, the district court was entirely correct in declaring the conviction on the original two-count indictment to be void, and in ordering the state to retry Hardwick or release him. *South Carolina v. Moore,* 447 F.2d 1067, 1072–74 (4th Cir. 1971); *Allman v. Hanley,*

302 F.2d 559, 562 (5th Cir. 1962) (civil case); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3737, at 744 (1976). *But cf. United States ex rel. Walker v. Gunn,* 511 F.2d 1024, 1026–27 (9th Cir. 1975) (strictly construing requirement that petition be filed "before trial," 28 U.S.C. § 1446(c), in order to prevent frivolous removals). Following a series of legal maneuvers including Hardwick's first special plea of insanity and his second removal petition, the state reindicted him. The second indictment essentially repeated the two counts of the original indictment and also charged Hardwick with an additional count of armed robbery and an additional count of aggravated assault. A jury convicted him on all four counts of the second indictment and imposed the maximum penalty for each count. *See* Ga.Code Ann. §§ 26–1302, 26–1902 (1976). Appellant now contends that the reprosecution violated the double jeopardy clause of the fifth amendment and the due process clause of the fourteenth amendment.

### A. Double Jeopardy: Retrial

 When a conviction is overturned on direct appeal or on collateral attack, the double jeopardy clause does not bar retrial for the charges of which the successful appellant or petitioner has been found guilty. *E. g., North Carolina v. Pearce,* 395 U.S. 711, 719–20, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This rule is neither logically compelled, *see United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (*semble*), nor satisfactorily explained by either the "continuing jeopardy" or "waiver" theories, *see, e. g., Breed v. Jones,* 421 U.S. 519, 534, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). It nevertheless forms an integral part of our double jeopardy jurisprudence, *e. g., United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *Ludwig v. Massachusetts,* 427 U.S. 618, 629, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), perhaps because a no-retrial rule would substantially impair the state's ability to aggressively enforce the criminal law while offering defendants scant additional protection against persecution by prosecution. *Cf. United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (rule prohibiting retrial after mistrial declared over defendant's objection "would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide"). Thus, the fact that the state retried appellant on the two *original* counts following his successful habeas action gives us no constitutional pause.

Nor do we believe that appellant was "twice put in jeopardy" with respect to the *added* counts of the second indictment. "An arithmetical as well as constitutional precondition to being 'subject for the same offense to be twice put in jeopardy' . . . is to be once put in jeopardy." *Bretz v. Crist,* 546 F.2d 1336, 1340 (9th Cir. 1976). Trial on the *added* counts could not amount to double jeopardy unless those *added* counts were the "same offense" as the *original* counts, because appellant was obviously tried only one time on the *added* counts.

Although the due process clause may impose some as-yet undetermined limit on a state's constitutional power to classify and punish a course of conduct as several distinct offenses, the double jeopardy clause's prohibition of multiple punishments for the "same offense" is not violated as long as the "same evidence" test is satisfied:

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

This Court has consistently employed the same evidence test in deciding whether the state is attempting to punish a defendant twice for the "same offense," *E. g., United States v. Linetsky,* 533 F.2d 192, 197 (5th Cir. 1976) (mailing of identical obscene materials to different addresses at different times constituted separate violations of

statute prohibiting use of mails to transport obscene materials); *United States v. Croucher,* 532 F.2d 1042 (5th Cir. 1976) (defendant, whose business was narcotics smuggling, could be convicted of two conspiracies to violate narcotics laws where persons involved and the overt acts were different); *Dryden v. United States,* 403 F.2d 1008, 1009 (5th Cir. 1968) ("the offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proved in the trial of the other"); *Harlow v. United States,* 301 F.2d 361, 375 (5th Cir. 1962). Applying that test to the facts of this case, we hold that neither *added* count was an attempt to punish appellant twice for the "same offense." The original robbery count charged Hardwick with robbing three C&S employees of some $43,000 of the bank's money; the added robbery count accused him of also robbing a bank customer of some $300 which was in the customer's possession. The original assault count charged Hardwick with assaulting three policemen during the shootout; the added assault count accused him of assaulting a probation officer whom he had bodaciously seized and used as a shield during the gun battle.

■ A second prosecution for the "same offense" also occurs when the state attempts to relitigate issues of fact necessarily determined in a defendant's favor at a prior trial. *Ashe v. Swenson,* 397 U.S. 436, 443–45, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The collateral estoppel component of the double jeopardy clause, *id.* at 445, 90 S.Ct. 1189, therefore prohibits the state from relitigating an issue against a particular defendant unless "taking into account the pleadings, evidence, charge, and other relevant matter, . . . a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," *id.* at 444, 90 S.Ct. at 1194 (citation omitted); *see Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972). In the instant case, however, no factfindings favorable to appellant were necessarily part of the first jury's verdict: he was convicted on both counts of the original indictment. In retrying him on those counts, the state did not seek to deny him the benefit of a previous favorable verdict. And because the two other counts of the second indictment were additional charges, appellant cannot claim that the first jury implicitly acquitted him of those charges. *Cf. Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (jury returned no verdict on greater offense, but convicted on lesser included offense; *held,* defendant may not be retried for greater offense after conviction is overturned, the jury having implicitly acquitted him of that greater offense). Finally, since the double jeopardy clause does not require the state to join in a single proceeding all charges arising from one criminal episode or transaction, *compare Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), *with id.* at 448–460, 90 S.Ct. 1189 (Brennan, J., concurring), the fact that the state did not try appellant on all four counts at the first trial does not by itself show that appellant was twice put in jeopardy.

### B. Due Process: Resentencing

■ In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that the due process clause

"requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."

395 U.S. at 725, 89 S.Ct. at 2080.

To ensure the absence of vindictiveness and to assure defendants that they will not be penalized for asserting their rights on appeal, the Court held that "whenever a judge imposes a more severe sentence upon

a defendant after a new trial, the reasons for his doing so must affirmatively appear" and must be based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," 395 U.S. at 726, 89 S.Ct. at 2081.

Decisions after *Pearce* have not been entirely consistent in applying the *Pearce* principle. In the first post-*Pearce* case, *Moon v. Maryland,* 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970) (per curiam), the court dismissed the writ of certiorari as improvidently granted when counsel for the defendant conceded at oral argument that the judge who resentenced Moon had not acted vindictively. 398 U.S. at 320–21, 90 S.Ct. 1730; *see Chaffin v. Stynchcombe,* 412 U.S. 17, 25–26, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). Other decisions, however, invoke the *Pearce* rule whenever there is a realistic likelihood that a defendant will fear revengeful resentencing, regardless of whether in fact vindictiveness played a part in the resentencing decision. *E. g., Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369 (9th Cir. 1976); *United States v. Jamison,* 164 U.S. App.D.C. 300, 505 F.2d 407, 415 (1974). Thus, in *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court held that neither "the hazard of being penalized for seeking a new trial" nor a

defendant's justifiable fear "of judicial vindictiveness" that would deter appeals, was "inherent" in a two-tier court system where persons convicted of misdemeanors in so-called inferior courts could obtain trial *de novo* (and risk a greater sentence) in a court of general criminal jurisdiction. 407 U.S. at 112–120, 92 S.Ct. 1953. These results can be harmonized if *Pearce's* prophylactic rule is applied in all cases where either actual vindictiveness or a realistic fear of vindictiveness is demonstrated, *see United States v. Floyd,* 519 F.2d 1031, 1033 (5th Cir. 1975), as is the current practice of this Court. A substantial tension still exists, however, between *Pearce* and *Colten.* Apparently the only distinction between the two cases is that in *Pearce* the additional sentence was imposed by a different judge of the same court,[1] while in *Colten* the stiffer penalty was imposed by a different judge of the *de novo* court.[2] Indeed, the *Pearce* opinion itself seems to be predicated on the notion that the same judge imposed the harsher resentence,[3] an assumption which this Court also made.[4]

In the instant case these doctrinal difficulties pose no significant problem. The sentencing authority at both trials was a jury. Both juries imposed identical penalties on the two original counts. With respect to those courts, appellant has failed to demonstrate the *sine qua non* of a vindic-

1. See *State v. Pearce,* 266 N.C. 234, 236, 145 S.E.2d 918, 920 (1966) (Judge Williams at first trial); *State v. Pearce,* 268 N.C. 707, 708, 151 S.E.2d 571, 572 (1966) (Judge McLaughlin at second trial). Justice Marshall drew attention to this fact in his dissenting opinion in *Chaffin v. Stynchcombe,* 412 U.S. 17, 41 n. 4, 93 S.Ct. 1977, 1990, 36 L.Ed.2d 714 (1973), arguing that the differences between judge and jury sentencing are "institutional, not personal: juries are not continuing bodies and may have little interest in deterring appeals or vindicating a colleague."

2. See *Colten v. Kentucky,* 407 U.S. 104, 108, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

3. See *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Colten v. Kentucky,* 407 U.S. 104, 116–118, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). This assumption was most clear in *Chaffin v. Stynchcombe,* 412 U.S. 17, 27, 93 S.Ct. 1977, 1983,

36 L.Ed.2d 714 (1973): "As was true in *Colten,* the second sentence is not meted out by the same judicial authority whose handling of the prior trial was sufficiently unacceptable to have required a reversal of the conviction. Thus, the jury, *unlike the judge who has been reversed,* will have *no personal stake in the prior conviction and no motivation to engage in self-vindication.*" (Emphasis added.) *Accord, Blackledge v. Perry,* 417 U.S. 21, 26, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974) ("there was [in *Colten* ] little possibility that an increased sentence on trial *de novo* could have been motivated by personal vindictiveness on the part of the sentencing judge").

4. See *Arechiga v. Texas,* 469 F.2d 646, 647 (5th Cir. 1973), *corrected sub silentio in United States v. Floyd,* 519 F.2d 1031, 1034 & n. 5 (5th Cir. 1975).

tive resentence claim—a second sentence that is in fact harsher than the first. Furthermore, the Supreme Court, in a case involving Georgia's system of jury sentencing, has held that a jury's lack of knowledge of the prior sentence, its lack of a personal stake in the overturned judgment, and its lack of an institutional interest in discouraging appeals, generally leaves "no basis for holding that jury resentencing poses any real threat of vindictiveness," *Chaffin v. Stynchcombe,* 412 U.S. 17, 28, 93 S.Ct. 1977, 1983, 36 L.Ed.2d 714 (1973).

With respect to the two added counts, a similar conceptual stumbling block obstructs appellant's logic: since no sentence on these two counts was imposed at the first trial, it cannot be said that the sentence imposed by the second jury was a retaliatory penalty.

### C. Due Process: Reindictment

The record does not indicate why the decision was made to indict Hardwick on the two added counts after he had exercised various procedural rights with at least partial success. The State points out that the prosecutor who obtained the first indictment against Hardwick died before the second indictment was brought. The absence of a personal dispute with a defendant, however, does not prevent application of the *Pearce* rule, as the facts of *Pearce* and its progeny show. *See* note 3 *supra.* *Cf. United States v. Floyd, supra.* Thus, the mere fact that a new prosecutor has taken over the case does not explain why charges not originally brought were added on retrial.

The leading case on prosecutorial vindictiveness is *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In *Blackledge,* the defendant was convicted of a misdemeanor by a North Carolina state court. After the defendant claimed his right to trial *de novo* in a higher court, the prosecutor obtained a superseding indictment charging the defendant with a felony rather than a misdemeanor. Both the original misdemeanor (assault with a deadly weapon) and the subsequent felony (assault with a deadly weapon with intent to kill) charges were based on the same fight between the defendant and the single fellow prisoner allegedly assaulted.

In holding that the *Pearce* principle applies to prosecutorial as well as judicial vindictiveness, the Supreme Court said:

> "A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential of incarceration. Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*."

417 U.S. at 28–29, 94 S.Ct. at 2103.

The State of Georgia contends that no increased sentence has been visited upon appellant, because he will be *eligible* for parole at the same time regardless of the number of crimes for which he stands convicted. This blinks reality. We cannot assume that a parole board would consider a prisoner with four felony convictions in the same light as a prisoner with two felony convictions,[5] and in any event Hardwick's "potential period of incarceration," *Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), has been doubled.

---

**5.** The Court of Appeals for the Third Circuit confronted a similar argument in *United States v. Hawthorne,* 532 F.2d 318 (3d Cir. 1976). There, the Court held that a sentence under which a defendant will not be eligible for parole until one-third of the sentence has been served, was harsher than one under which a defendant would be eligible for parole at any time. The Court ruled that for *Pearce* purposes, it was irrelevant that—as a factual matter—the Parole Board would probably not grant parole in the latter case until at least one-third of the sentence had been served. *See* 532 F.2d at 323–24. We decline to rely upon similar speculations here in order to hold that no harsher sentence has been imposed on Hardwick.

We recognize that there is a broad ambit to prosecutorial discretion, most of which is not subject to judicial control. *United States v. Cox,* 342 F.2d 167 (5th Cir.) (en banc), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). But if *Blackledge* teaches any lesson, it is that a prosecutor's discretion to reindict a defendant is constrained by the due process clause. Had the original prosecutor initially charged Hardwick on all four counts, no improper motive or effect of the reindictment could be inferred. But once a prosecutor exercises his discretion to bring certain charges against a defendant, neither he nor his successor may, without explanation, increase the number of or severity of those charges in circumstances which suggest that the increase is retaliation for the defendant's assertion of statutory or constitutional rights.

An increase in the severity or number of charges if done without vindictiveness may be easily explained. For example, evidence of the additional crimes may not have been obtained until after the first indictment or information is filed,[6] or the additional crime may not be complete at the time charges are first brought.[7] And a prosecutor may, without explanation, refile charges against a defendant whose bargained-for guilty plea to a lesser charge has been withdrawn or overturned on appeal, provided that an increase in the charges is within the limits set by the original indictment.[8] Other explanations which would negate vindictiveness could include mistake or oversight in the initial action, a different approach to prosecutorial duty by the successor prosecutor, or public demand for prosecution on the

additional crimes allegedly committed. The list is intended to be illustrative rather than exhaustive. While Hardwick has made a prima facie case by showing that the number of crimes charged against him as a result of this episode was doubled after he had succeeded in setting aside the original convictions, the prosecutor may rebut this prima facie proof by establishing his reasons for adding the two new charges were other than to punish a pesky defendant for exercising his legal rights.

This case presents the issue of prosecutorial vindictiveness in a setting different from *Blackledge.* It brings into sharp conflict (1) the right of the defendant to be free of apprehension that the state might subject him to an increased potential punishment if he exercises his right to make a direct or collateral attack on his conviction with (2) the prosecutor's broad discretion to control the decision to prosecute.

In *Blackledge* the prosecutor had already exercised his discretion to bring a misdemeanor charge against Perry based upon the alleged assault on a fellow prisoner. After his conviction on the misdemeanor charge, Perry noticed an appeal to the Superior Court. It was granted to him by North Carolina law as a matter of right. After this notice of appeal was filed, the prosecutor obtained an indictment from a grand jury charging Perry with the felony of assault with the intent to kill for the same conduct for which Perry had been tried and convicted in the lower court. Thus, *Blackledge* involves the substitution of a more serious charge and not the making of a decision to initiate prosecution for alleged criminal activity.

---

6. *E. g., United States v. Jamison,* 164 U.S.App. D.C. 300, 505 F.2d 407, 416–417 (1974); *United States v. Mallah,* 503 F.2d 971, 988 (2d Cir. 1974) (no *Pearce* problem where, after successful appeal of narcotics conviction, Government reindicted large dealer for heroin-selling activities, rather than cocaine-selling activities, and did not increase the number of counts except as justified by newly discovered information).

7. *E. g., Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (assault victim died after first trial; *held,* no constitutional barrier to reindictment for murder); *Culberson*

*v. Wainwright,* 435 F.2d 1219, 1220 (5th Cir. 1972) (same).

8. *Moore v. Foti,* 546 F.2d 67 (5th Cir. 1977); *Arechiga v. Texas,* 469 F.2d 646, 647 (5th Cir. 1973); *Harrington v. United States,* 444 F.2d 1190, 1193–94 (5th Cir. 1971); *United States v. Williams,* 534 F.2d 119, 121–22 & n. 2 (8th Cir. 1976); *United States v. Anderson,* 514 F.2d 583, 588 (7th Cir. 1975); *United States ex rel. Williams v. McMann,* 436 F.2d 103, 105 (2d Cir. 1970); *United States v. Rines,* 453 F.2d 878, 879 (3d Cir. 1971); *United States v. Johnson,* 537 F.2d 1170, 1174–75 (4th Cir. 1976).

In the case at bar, Hardwick was originally indicted for robbing the C & S Bank and for committing an aggravated assault on three policemen during the shootout that accompanied the robbery. Those two prosecutorial decisions remain unaltered in the present context and form the basis for two of the four convictions and sentences that are the subject of this appeal. Before the retrial of Hardwick's case, a different prosecutor obtained a superseding indictment which charged Hardwick with two additional, separate criminal actions—a robbery of a bank customer, and an assault on a probation officer who was seized and used as a shield in the gun battle with the police. Though these latter two events occurred in the same overall time interval as the acts covered by the first two indictments, they were different and distinct activities and thus were the subjects of discretionary prosecutorial decisions which up to then had not been made. These charges were not harsher variations of the same original decision to prosecute as in *Blackledge*. Under this court's decision in *Cox*, the court is not to interfere with the "free exercise of the discretionary powers of attorneys of the United States in their control of criminal prosecutions." 342 F.2d at 171. A fortiori, the discretion of a State prosecuting officer in making the decision to prosecute crime may not be controlled by a court unless it be established that his motives are in fact vindictive.

The apprehension of vindictiveness which controlled the decision in *Blackledge* had no effect on prosecutorial discretion because there the decision to prosecute Perry for this very assault on his fellow prisoner had already been made. On the other hand, if we were to adopt apprehension of vindictiveness as opposed to vindictiveness in fact to be the standard by which we judge whether new prosecutions for different criminal activities may be initiated, we would render the prosecutor's discretion meaningless in every case in which a de-

fendant is initially indicted for less than all the violations his alleged spree of activity would permit. In such a situation, it is enough that a prosecutor, who decides to add charges to a prior indictment, prove that he did not in fact act vindictively. The test is to be applied to the prosecutor's actions rather than the defendant's reactions.

*United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974) was decided prior to *Blackledge* but under Second Circuit authority which was to the same effect. That court stated

It is one thing to increase a charge from manslaughter to murder, and quite another to charge a defendant, subsequent to a successful appeal, with a second murder.

503 F.2d at 988. Thus the court found no constitutional problem with the prosecutor's decision, after defendant successfully had convictions for cocaine possession set aside, to reindict for possession of heroin, because it was a different offense.

This defendant has been convicted twice for the charges contained in the first two counts of the indictment and the evidence against him is overwhelming. The ends of justice will not be served by requiring a third trial before his conviction on these two counts can become final. There could be no improper motive in refiling these charges. They properly should stand. This is what the Fourth Circuit did in *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976), even though it reached a conclusion contrary to that we come to today on the added charges.[9]

Following the course we took in *Colon v. Hendry,* 408 F.2d 864, (5th Cir. 1969), we hold here that the facts made out a prima facie case for the petitioner but that the cause should be remanded to the district court to afford the prosecutor the opportunity to come forward with countervailing evidence. We leave it entirely to the district court's discretion as to whether a hear-

---

**9.** This paragraph was prepared to reflect the opinion of the majority of the court. Judge Tuttle notes that he would also vacate Hardwick's two original convictions if the trial court should determine on remand that the additional charges were added as a result of prosecutorial vindictiveness.

ing will be necessary to show why the two new charges were added to the indictment against Hardwick after he had exercised his rights to remove the prosecution and to enter a special plea of insanity.

The judgment of the district court insofar as it refused to grant habeas corpus relief to Hardwick on his conviction for the charges initially brought against him is affirmed. However, the judgment of the court denying habeas corpus relief on the two added charges is vacated and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART AND, IN PART, VACATED AND REMANDED.