ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 5, 2008

The Honorable Jeff Wentworth
Chair, Jurisprudence Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0622

Re: Whether persons operating or participating in a pilot needle- and syringe-exchange program authorized for Bexar County by Government Code section 531.0972 may be prosecuted for possessing drug paraphernalia under Health and Safety Code section 481.125 (RQ-0630-GA)

Dear Senator Wentworth:

You ask:

> whether the public health and Medicaid evaluation pilot program authorized by law under Section 531.0972 of the Government Code, effective September 1, 2007, . . . now enables participants of the pilot program . . . to carry out the mission of the program and the Legislature's intent of preventing the spread of HIV, hepatitis B and C, and other infectious and communicable diseases, without subjecting these persons to criminal prosecution or the threat of criminal prosecution in Texas under the Controlled Substances Act of the Health and Safety Code.[1]

*See* TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007); TEX. HEALTH & SAFETY CODE ANN. § 481.125 (Vernon 2003). You ask specifically whether persons participating in the Bexar County pilot program—"those associated with its operations and those whom it would serve"—may be prosecuted for possessing drug paraphernalia under the Texas Controlled Substances Act, Health and Safety Code section 481.125. Request Letter, *supra* note 1, at 1; *see id.* at 1–2.

Government Code section 531.0972 was adopted in 2007 as part of Senate Bill 10, to which you refer as the "Omnibus Medicaid Bill." *See* Act of May 27, 2007, 80th Leg., R.S., ch. 268, § 5, 2007 Tex. Gen. Laws 500, 504; Request Letter, *supra* note 1, at 1. Section 531.0972 expressly

---

[1]*See* Letter from Honorable Jeff Wentworth, Chair, Jurisprudence Committee, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Sept. 26, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

permits the Texas Health and Human Services Commission (the "Commission") to guide Bexar County's local health authority[2] in establishing a disease-prevention pilot program—which may include a needle- and syringe-exchange program:

> The commission *may* provide guidance to the local health authority of Bexar County in establishing a pilot program funded by the county to prevent the spread of HIV, hepatitis B, hepatitis C, and other infectious and communicable diseases. The program *may* include a disease control program that provides for the anonymous exchange of used hypodermic needles and syringes.

TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007) (emphasis added); *see also id.* § 531.001(2) (Vernon 2004) (defining "commission").

You question whether, should Bexar County elect to include such a needle- and syringe-exchange program as a component of its disease-prevention pilot program, those distributing as well as those accepting and using the needles and syringes may be prosecuted under the Texas Controlled Substances Act. *See* Request Letter, *supra* note 1, at 1–2; TEX. HEALTH & SAFETY CODE ANN. § 481.001 (Vernon 2003) (titled Texas Controlled Substances Act); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp. 2007) (defining "controlled substance"). Under the Texas Controlled Substances Act, the possession or delivery of drug paraphernalia, which includes "a hypodermic syringe, needle, or other object used or intended for use in parenterally injecting a controlled substance into the human body," is a criminal offense:

> (a)  A person commits an offense if the person knowingly or intentionally uses or possesses with intent to use drug paraphernalia . . . to inject . . . into the human body a controlled substance in violation of this chapter.

> (b)  A person commits an offense if the person knowingly or intentionally delivers, possesses with intent to deliver, or manufactures with intent to deliver drug paraphernalia knowing that the person who receives or who is intended to receive the drug paraphernalia intends that it be used . . . to inject . . . into the human body a controlled substance in violation of this chapter.

> (c)  A person commits an offense if the person commits an offense under Subsection (b), is 18 years of age or older, and the person who receives or who is intended to receive the drug paraphernalia is younger than 18 years of age and at least three years younger than the actor.

---

[2]Throughout this opinion, we refer to Bexar County's local health authority simply as Bexar County.

(d) An offense under Subsection (a) is a Class C misdemeanor.

(e) An offense under Subsection (b) is a Class A misdemeanor, unless it is shown on the trial of a defendant that the defendant has previously been convicted under Subsection (b) or (c), in which event the offense is punishable by confinement in jail for a term of not more than one year or less than 90 days.

(f) An offense under Subsection (c) is a state jail felony.

TEX. HEALTH & SAFETY CODE ANN. § 481.125 (Vernon 2003); *id.* § 481.002(17)(K) (Vernon Supp. 2007) (defining "drug paraphernalia" to include a hypodermic needle); *see also id.* § 481.002(8), (38) (defining "deliver" and "possession").

You suggest that Government Code section 531.0972 on its face clearly and unambiguously creates an exception to the Texas Controlled Substances Act such that individuals participating in a Bexar County program may not be subject to prosecution under section 481.125. *See* Request Letter, *supra* note 1, at 6. In the alternative, you suggest that, to the extent Government Code section 531.0972 is ambiguous on its face, the legislative intent behind the section requires us to construe it to create an exception to the Texas Controlled Substances Act. *See id.*; *see also* TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 2005) (authorizing a court to consider a statute's legislative history "whether or not the statute is considered ambiguous on its face"). As an additional alternative, you suggest that, to the extent Government Code section 531.0972 and the Texas Controlled Substances Act are inconsistent, section 531.0972 creates a specific exception to the more general Texas Controlled Substances Act. *See* Request Letter, *supra* note 1, at 6; *see also* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005) (directing that where a general provision and a special or local provision conflict irreconcilably, "the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail").

First, we address your argument that Government Code section 531.0972 is inconsistent with the Texas Controlled Substances Act. *See* Request Letter, *supra* note 1, at 6. We do not agree that the provisions are inconsistent. On its face, the disease-prevention pilot program merely allows—it does not require—Bexar County to implement a needle- and syringe-exchange program. The County may, possibly assisted by advice from the Commission, implement a program to prevent the spread of certain infectious and communicable diseases. TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007). That program *may*, in turn, include a needle- and syringe-exchange program. *Id.* Or it may not. *See id.* The word "may" denotes discretion not to do something. *Id.* § 311.016(1) (Vernon 2005) (stating that the word "'[m]ay' creates discretionary authority or grants permission or a power"). Because the pilot program statute merely allows a pilot component that includes a needle- and syringe-exchange program, it is not—on its face—inconsistent with the Texas Controlled Substances Act.

Similarly, because the statutes at issue are not inconsistent, we cannot agree that the mere allowance of a needle- and syringe-exchange program as part of the disease-prevention pilot program makes section 531.0972 a "clear and unambiguous" exception to Health and Safety Code section 481.125 such that individuals participating in a Bexar County program may not be subject to prosecution under the Texas Controlled Substances Act. *See* Request Letter, *supra* note 1, at 6. While Government Code section 531.0972 allows the establishment in Bexar County of a needle- and syringe-exchange program as part of a pilot program to prevent the spread of certain infectious or communicable diseases, nothing in Government Code chapter 531 or in the Texas Controlled Substances Act expressly excepts from prosecution under the Texas Controlled Substances Act those participating in a needle- and syringe-exchange program established under Government Code section 531.0972. *See generally* TEX. GOV'T CODE ANN. §§ 531.001–.604 (Vernon 2004 & Supp. 2007) (providing for the Health and Human Services Commission); TEX. HEALTH & SAFETY CODE ANN. §§ 481.001–.314 (Vernon 2003 & Supp. 2007) ("Texas Controlled Substances Act"). In other words, neither code provision addresses the other in any fashion.

Finally, we must reject the proposition that Government Code section 531.0972 is ambiguous on its face. Rather, on its face, the provision simply *permits* the Commission to guide Bexar County's local health authority in establishing a pilot program—which *may* include a needle- and syringe-exchange component—to prevent the spread of certain diseases. TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007).

Both Government Code section 531.0972 and the Texas Controlled Substances Act are clear and not in conflict or inconsistent. Only if Bexar County elects to include a needle- and syringe-exchange program as part of its disease prevention pilot program is there any potential conflict between these provisions. In that event, we are faced with two possible constructions of section 531.0972: One interpretation is to conclude that, because the Legislature did not except participants in the needle and syringe component of the program from the possibility of prosecution under section 481.125, they are subject to the possibility of such prosecution. The alternative is to conclude that, because the Legislature should not be presumed to have authorized the establishment of a portion of a disease-prevention program that is effectively illegal under the Texas Controlled Substances Act, section 531.0972 creates a special exception from the possibility of prosecution that applies to individuals participating in the pilot program. To interpret the statute, we apply established rules of statutory construction.

In construing a statute, a court seeks to ascertain and effectuate the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (citing TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998)). A court looks first to the plain meaning of a statute's words. *Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *see also Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (stating that statutes should not be construed to mean something other than what their plain words say unless there is an obvious error such as a typographical one or if construing a statute according to its plain meaning would lead to an absurd result); *State v. Cowsert*, 207 S.W.3d 347, 350 (Tex. Crim. App. 2006) (stating that a court focuses attention on a statute's literal text and tries to discern the fair, objective meaning of that text at the

time of its enactment) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). More significantly here, a court must presume that the Legislature adopted an enactment "with complete knowledge of the existing law and with reference to it." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942)). And a court must presume that the Legislature chose every word of a statute for a purpose and excluded every word that has been excluded for a purpose. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)).

Given that we must presume that the Legislature adopted Government Code section 531.0972 with complete knowledge of the existence of the Texas Controlled Substances Act, we must presume that it was aware of the possibility of criminal prosecution for participants in a needle- and syringe-exchange program. Yet the Legislature did not provide any language excepting participants in Bexar County's needle- and syringe-exchange program from criminal prosecution under the Texas Controlled Substances Act or any other Texas statute. We understand your argument that the Legislature *intended* to create such an exception. Nevertheless, nothing in the plain language of section 531.0972 establishes that exception. *See generally* TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007) (establishing pilot program). Nothing in the plain language of the Texas Controlled Substances Act does so either. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 481.001–.314 (Vernon 2003 & Supp. 2007) ("Texas Controlled Substances Act"). It is not within this office's normal province "to indulge in acts of legislation." *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 562 (Tex. App.—Tyler 2007, pet. denied) ("it is not within the judicial province to indulge in acts of legislation"); *cf. Sanchez v. State*, 182 S.W.3d 34, 41 (Tex. App.—San Antonio 2005) (stating that a court cannot assume the legislative prerogative by rewriting a statute), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006). Instead, we must take the statutes as we find them and allow the Legislature, if it wishes, to remedy any alleged defects. *Cf. Canal Ins. Co.*, 238 S.W.3d at 562 (stating that it is not for the courts to remedy defects or supply deficiencies in laws).

Moreover, we find several instances in which the Legislature *has* adopted express exceptions to the Texas Controlled Substances Act. For example, the Legislature has expressly stated that "[t]he provisions of [the Texas Controlled Substances Act] relating to the possession and distribution of peyote do not apply to the use of peyote by a member of the Native American Church in bona fide religious ceremonies of the church." TEX. HEALTH & SAFETY CODE ANN. § 481.111(a) (Vernon 2003). Similarly, the Legislature has expressly excepted from specified provisions of the Texas Controlled Substances Act a person who "possesses or delivers . . . drug paraphernalia to be used to introduce tetrahydrocannabinols or their derivatives into the human body, for use in a federally approved therapeutic research program." *Id.* § 481.111(c). And section 481.062 lists a number of persons who may possess a controlled substance without violating the Texas Controlled Substances Act, including an agent of a registered manufacturer, distributor, or dispenser of the controlled substance "acting in the usual course of business or employment"; "the ultimate user or a person in possession of the controlled substance under" a lawful physician's order; and a law-enforcement officer who is lawfully engaged in enforcing controlled-substance laws. *Id.* § 481.062(a)(1), (3), (4); *see also id.* § 481.033 (excluding certain substances from the application of the Texas Controlled Substances Act); *id.* § 481.062(a)(2), (5), (b) (exempting other specific persons from the Texas

Controlled Substances Act and authorizing the director of the Texas Department of Public Safety to, by rule, waive registration requirements in certain circumstances); *id.* § 481.0621(a) (excepting from subchapter C of the Texas Controlled Substances Act "an educational or research program of a school district or a public or private institution of higher education"); *id.* § 481.065 (exempting the use of controlled substances used in medical research that is authorized by the Commissioner); *id.* §§ 481.071, .072 (regarding the dispensation of controlled substances for valid medical purposes); *id.* §§ 481.077(b), .124(f) (Vernon Supp. 2007) (allowing the director of the Texas Department of Public Safety to exempt chemical precursors from the requirements of these sections if the director determines that the precursors would not be dangerous or used in the illicit manufacture of drugs); *id.* § 481.111(b), (d) (Vernon 2003) (exempting from specified provisions of the Texas Controlled Substances Act the possession of denatured sodium pentobarbital by personnel of a humane society or an animal control agency and the use of anabolic steroids administered to livestock or poultry); *cf. id.* §§ 481.122(b) (Vernon 2003), .123(a) (Vernon Supp. 2007) (creating affirmative defenses to prosecution for a violation of the Texas Controlled Substances Act in certain circumstances). The presence of these express exceptions to the Texas Controlled Substances Act indicates that the Legislature knows how to create such an exception when it wishes to do so. It did not, however, choose to create an exception here. *See Office of Att'y Gen. v. Lee*, 92 S.W.3d 526, 529 (Tex. 2002) ("every word excluded from a statute must . . . be presumed to have been excluded for a purpose") (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)); *see also Cameron*, 618 S.W.2d at 540 (stating that if the Legislature intended for a particular statute to impose certain restrictions, the Legislature could have done so; the fact that the Legislature did not do so suggests that it intended not to do so).

In enacting section 531.0972, the Legislature *allowed* the implementation of a pilot disease-prevention program that, in turn, *allows* Bexar County to be advised by the Commission and *allows* Bexar County to create a needle- and syringe-exchange program as part of its disease prevention pilot program. In contrast to other statutory provisions excepting certain possession and distribution of controlled substances from prosecution under the Texas Controlled Substances Act, the Legislature remained silent as to any such exception under Bexar County's pilot program. In light of the express exceptions to the Texas Controlled Substances Act and the fact that the disease prevention pilot program may be implemented *without* including a needle- and syringe-exchange program, we do not construe the Legislature's silence as intent to except the needle- and syringe-exchange component, if any, from prosecution.

Additionally, while you suggest that an exception from prosecution under the Texas Controlled Substances Act is required to give effect to the language of section 531.0972 *allowing* a needle- and syringe-exchange program as part of a disease-prevention program, such an exception is not required in order to allow the needle- and syringe-exchange component to proceed. First, the lack of an express exception from criminal prosecution does not foreclose the Commission's authority to provide guidance to Bexar County in the establishment of a needle- and syringe-exchange component as part of its disease-prevention pilot program. Second, assuming that after such guidance Bexar County includes the exchange program as part of its disease prevention program, the possibility remains that prosecutorial discretion may be exercised in evaluating the facts and evidence of possession of drug paraphernalia to determine whether a criminal violation of the

Texas Controlled Substances Act has occurred. *See Hardwick v. Doolittle*, 558 F.2d 292, 301 (5th Cir. 1977) (recognizing "a broad ambit to prosecutorial discretion"); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (indicating that a prosecutor has discretion to determine "whether a prosecution shall be commenced or maintained" and that courts are not to interfere with a prosecutor's free exercise of discretion); *see also* TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005) ("It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done."). Third, participants who reasonably believe their conduct is "required or authorized to assist a public servant in the performance of his official duty" may raise that justification in any prosecution brought against them. TEX. PENAL CODE ANN. § 9.21(a), (d)(2) (Vernon 2003).

It also should be noted that even if Government Code section 531.0972 were construed as an exception to prosecution under the Texas Controlled Substances Act, participants in a needle- and syringe-exchange program could possibly be subject to prosecution under other laws. By way of example only, if an adult participant in such an exchange program conspires to dispense a needle or syringe to a minor who is at least three years younger than the adult, the adult may be prosecuted for criminal conspiracy. *See id.* § 15.02 (stating that a person criminally conspires if with intent to commit a felony he agrees to commit a felony and performs an overt act in pursuance of the agreement); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.125(c) (stating that an adult commits a felony who dispenses drug paraphernalia to a person under 18 and at least three years younger than the adult). Further, under the Federal Controlled Substances Act, it is illegal to sell, transport, import, or export drug paraphernalia. 21 U.S.C. § 863(a) (2000); *see also id.* § 863(d) (defining "drug paraphernalia" as equipment of any kind designed or intended to be used for injecting controlled substances into the human body). If two or more participants in a needle- and syringe-exchange program distribute drug paraphernalia, their actions may constitute federal criminal conspiracy. *See* 18 U.S.C. § 371 (2000). If a participant in the exchange attempted or conspired to distribute drug paraphernalia, his actions may also constitute a crime under the Federal Controlled Substances Act. *See* 21 U.S.C. § 846 (2000).

We thus conclude that neither Government Code section 531.0972 nor the Texas Controlled Substances Act excepts from prosecution persons who possess drug paraphernalia while participating in a pilot needle- and syringe-exchange program authorized for Bexar County. Participants in the program may, in the discretion of the prosecutor, be prosecuted under the Texas Controlled Substances Act.

# S U M M A R Y

In May of 2007, the Legislature authorized a pilot program in Bexar County "to prevent the spread of HIV, hepatitis B, hepatitis C, and other infectious and communicable diseases." TEX. GOV'T CODE ANN. § 531.0972 (Vernon Supp. 2007). The legislation provided that the Health and Human Services Commission "*may* provide guidance" to Bexar County in establishing such a program. *Id.* (emphasis added). The statute also *allowed* Bexar County to include in its pilot program a needle- and syringe-exchange program. *See id.*

The Texas Controlled Substances Act provides that possession or delivery of drug paraphernalia—including "a hypodermic syringe, needle, or other object used or intended for use in parenterally injecting a controlled substance into the human body"—is an offense that subjects a person to criminal prosecution. TEX. HEALTH & SAFETY CODE ANN. § 481.002(17)(K) (Vernon Supp. 2007).

Because a needle and syringe exchange is an optional component of Bexar County's pilot disease-prevention program, the program need not include a needle- and syringe-exchange component. If Bexar County's pilot disease-prevention program does not include a needle and syringe exchange, a person would not be subject to prosecution under section 481.125 of the Health & Safety Code for participating in the program. If, however, Bexar County elects to include such a needle- and syringe-exchange program as part of this overall disease-prevention program, the participants in that program appear to be subject to prosecution under the Texas Controlled Substances Act because the Legislature did not except them from such prosecution.

In contrast to the Bexar County pilot-program statute, the Legislature has, in numerous statutes, adopted express language that excludes certain activities from criminal prosecution under the Texas Controlled Substances Act. Because the Legislature has expressly demonstrated its ability and willingness to exclude otherwise criminal acts from prosecution under the Texas Controlled Substances Act—but did not do so here—this office can neither assume nor legislate such an intent.

Additionally, even if the participants are not subject to prosecution under the Texas Controlled Substances Act, participants may face criminal charges under other Texas or federal statutes.

Finally, any decision to prosecute program participants is a matter of prosecutorial discretion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee