# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1127

**STATE OF LOUISIANA**

**VERSUS**

**ROBERT WAYNE LEGER**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 29804-10
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and
Elizabeth A. Pickett, Judges.

**REMANDED WITH INSTRUCTIONS.**

**John Foster DeRosier**
**District Attorney, Fourteenth Judicial District Court**
**Karen C. McLellan**
**Carla Sigler**
**Assistant District Attorneys**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR STATE-APPELLEE:**
    **State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Robert Wayne Leger**

**Robert Wayne Leger**
**Avoyelles Correctional Center**
**1630 Prison Rd.**
**Cottonport, LA 71327**

**PICKETT, Judge.**

## FACTS

The following facts were set forth by the state at the guilty plea proceeding:

Your Honor, between January 1st of 2006 and May 11th of 2007, this defendant touched a juvenile, who's [sic] initials are T.J., his date of birth is August 11th, 1991. At the time he would have been 15 years of age. Touched him on more than one occasion in his genital area. When the defendant was questioned, he revealed that during wrestling with the victim, he did touch him in his genital area, and that he would later masturbate after having touched the victim. And this did occur in Calcasieu Parish.

The defendant, Robert W. Leger, was charged by bill of indictment with three counts of sexual battery, violations of La.R.S. 14:43.1 under district court docket number 07-14444. On May 14, 2008, the defendant entered a guilty plea to one count of sexual battery. In exchange, the state dismissed the other two counts. The defendant and the state had a joint recommendation of twenty-five years at hard labor. The trial court imposed the twenty-five year hard labor sentence without benefit of probation, parole, or suspension of sentence.

Two years later, the defendant filed a motion seeking to correct an illegal sentence. A hearing was held on June 18, 2010. The trial court corrected the illegal sentence to ten years at hard labor without benefit of probation, parole, or suspension of sentence.

On September 21, 2010, the state filed a habitual offender bill under district court docket number 10-29804 charging the defendant as a second offender. On November 10, 2010, a hearing was held at which the trial court adjudicated the defendant a second offender. The trial court sentenced him to twenty years.

On December 6, 2010, the defendant filed a Motion for Reconsideration of Sentence alleging his sentence was vindictive and excessive, the state breached the plea agreement, and he was not afforded a Presentence Investigation Report (PSI).

The trial court denied the motion as untimely. The defendant sought review by this court, and this court held in pertinent part:

> **WRIT NOT CONSIDERED, IN PART; WRIT GRANTED AND MADE PEREMPTORY, IN PART:** Relator seeks relief from a ruling in the trial court denying his motion to reconsider sentence. In his pleadings filed in the trial court, he did not present or argue that he was entitled to a reconsideration of sentence. The issues he presents to this court cannot be raised in a motion to reconsider sentence and are appropriately raised in an appeal. Accordingly, Relator's request for relief for reconsideration of sentence is not considered.
>
> In the pleading filed in the trial court, Relator did give notice of appeal and request action by the court, including the granting of an appeal. The trial court failed to address the issues raised in the pleading titled "Notice of Appeal." Accordingly, Relator's writ application is granted, in part, and this matter is remanded for consideration of all issues raised therein.

*State v. Leger*, an unpublished writ bearing docket number 11-173 (La. App. 3 Cir. 5/25/11).

The defendant filed a motion seeking appeals under both district court docket numbers, 07-14444 and 10-29804, which are pending before the court. This appeal will address the issues under district court docket number 10-29804, the habitual offender proceeding.

## ASSIGNMENT OF ERROR

The defendant asserts the following *pro se* assignment of error:

Did the District Court error [sic] in allowing the State to file a multiple bill over two years after Petitioner's plea and then only after he exercised his right to legal redress on a motion to correct an illegal sentence which was granted by the Court.

The defendant, through his attorney, sets forth the following assignments of error:

1. The twenty (20) year sentence imposed in this case should be vacated and this case remanded for re-sentencing.

A. The trial court erred in denying Mr. Leger's Pro Se Motion for Reconsideration of Sentence as untimely.

B. The trial court failed to comply with Louisiana Code of Criminal Procedure Article 894.1.

C. The trial court failed to vacate the ten-year sentence imposed for one count of sexual battery prior to imposing the enhanced sentence of twenty years as a second-felony offender pursuant to the Habitual Offender Law.

2. The trial court failed to properly advise Robert Leger of the time limitation for filing an application for post-conviction relief.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed this court for errors patent on the face of the record. After reviewing the record, we find a procedural issue worth noting.

The defendant entered a guilty plea under district court docket number 07-14444. The state filed a habitual offender bill charging the defendant as a second offender under district court docket number 10-29804. A hearing was held on November 10, 2010. The transcript of the hearing indicates it was held under district court docket number 10-29804. At the conclusion of the hearing, the trial court imposed the habitual offender sentence. The minute entry of the November 10, 2010 proceeding does not include the sentence imposed. Therefore, we order the minute entry of the November 10, 2010 proceeding be amended to include the entire proceeding held that day as reflected by the November 10, 2010 transcript.[1]

## PRO SE ASSIGNMENT OF ERROR

The defendant contends that the trial court erred in allowing the state to file a multiple offender bill over two years after his plea and after he exercised his right to "legal redress" on a motion to correct an illegal sentence which was granted by the trial court. The defendant explains that the state filed the multiple offender bill two years after he entered a guilty plea, and the state did it to punish him for

---

[1]The minute entry reflecting the November 10, 2010 sentencing was included in the record in 11-1126 and the minute clerk mistakenly captioned the proceeding under the incorrect docket number.

3

seeking correction of the illegal sentence. The transcript of the guilty plea proceeding indicates the state advised that it would dismiss two counts of sexual battery and recommend a sentence of twenty-five years in exchange for the defendant entering a guilty plea to one count of sexual battery. The trial court advised the defendant the penalty for the offense was twenty-five years to life.[2] Additionally, the trial court informed the defendant in pertinent part: "I understand that a conviction or multiple convictions in this case may become [sic] the basis for the enhancement of the penalty I may be subject to in the event of another conviction, or convictions, under the current habitual offender jurisprudence."

The state pointed out that the defendant was currently on parole in Texas for the crime of murder. The trial court imposed the recommended sentence of twenty-five years at hard labor. There was no mention that the state was filing a habitual offender bill to enhance the sexual battery sentence or planned to do so.

At the hearing on motion to correct illegal sentence held in June 2010, the parties acknowledged the defendant had been sentenced under the incorrect provision of La.R.S.14:43.1; the proper sentence was zero to ten years. The following pertinent exchange occurred between the parties:

**MR. DEPUY:**

Your Honor can correct the sentence, but at the same time, the State would like to explore and look into whether we have grounds to file a habitual offender, and request Your Honor to sentence him as a habitual offender, because he has a prior conviction for murder --

**THE COURT:**

Well, --

**MR. DEPUY:**

-- out of Texas.

---

[2]This was the incorrect penalty; the correct was zero to ten years. La.R.S. 14:43.1.

**THE COURT:**

-- that would be reopening -- that would be reopening the case, after he's -- what did he plead guilty to?

**MR. LEGER:**

For one count, Your Honor.

**MR. DEPUY:**

He pled guilty to one count of sexual battery, Your Honor.

**THE COURT:**

Well, how can we -- how can we go back after sentencing and do the habitual offender aspect of it? I'm just -- well, here's -- we do have the court records. Because he requested the minutes. Let me look at it.

**MR. DEPUY:**

Your Honor, the State has not been prejudiced with having the opportunity to file a habitual offender. Your know, if I do not -- if I have waived that for some reason, then I'd like to be able to explore that before -- nothing in my file indicates that the State agreed not to file a habitual offender.

**THE COURT:**

This was a -- this is a joint recommendation as to the sentence?

**MR. DEPUY:**

By Mr. Wilson and by the Public Defenders' Office.

**THE COURT:**

The events occurred January 1, 2006, and May 11, 2007.

**MR. DEPUY:**

Correct, Your Honor.

**THE COURT:**

Does that put him under the old law, or the new law, and is that an issue?

**MR. DEPUY:**

Well, the issue would be -- it would not be an issue, because either way, the victim would not have been under 13 at the time; the

victim would have been under 15 at the time. Which, under the statue, obviously, he would have violated, and been guilty of sexual battery.

And the State's concern that I would like to address to the Court is: if Your Honor were to impose a sentence under the range of zero to 10, the State would like to look into at least having whether I can explore filing a habitual offender, given there was a recommendation that was not proper. And I think Mr. Williams did represent Mr. Leger at the time.

**THE COURT:**

So you're saying if I would correct the sentence to less than 10?

**MR. DEPUY:**

Your Honor would have the sentencing range of zero to 10.

**THE COURT:**

You're agreeing to that?

**MR. DEPUY:**

No, I'm not agreeing to anything, Your Honor. But Your Honor would have to – would have to correct the sentence that was imposed.

**MR. WILLIAMS:**

Your Honor, I've just asked Mr. Leger who represented him when Ms. Wilson was prosecuting this. He indicated that I did. If this -- and based on the statements made to you, in fact, that this is an illegal sentence, then the Court goes back and sentences him under the conviction that was put in place at the time, merely changing the range. Now, if we're going to -- if the D.A. wants to go back and consider whether they can habitualize him, then we just throw everything out and start from scratch. Your job with regards to the illegal sentence is to merely **--**

**THE COURT:**

What do you mean --

**MR. WILLIAMS:**

Now, if the D.A. wants to go back and consider habitualizing him, then that's -- that's not proper at all.

**THE COURT:**

Then the sentence is gone, the guilty plea is withdrawn; is that what you're saying?

**MR. WILLIAMS:**

That's what would have to happen. Your job, as correcting the illegal sentence, is to look to see -- it should not have been 25, it should have been zero to 10, and to go back and correct it under that basis. Now, if the D.A. wants to consider habitualizing, then we have to go back from scratch, because in any sentence that any defense attorney would put forth in agreement would be to agree not to habitualize, okay. So, if they want to change the rules of the game, after both the prosecutor and the defense attorney did not catch this -- if they want to change the rules of the game, then that starts the game all over.

**THE COURT:**

I tend to agree, but I want to give the State time to -- there's two issues: one, do they even disagree that the maximum sentence was 10 years. You have to -- you have to take a position on that. And if you're going to argue that the range was as much as 25, we need to know what the basis is. Okay?

**MR. DEPUY:**

Okay, Your Honor.

**THE COURT:**

I mean, to me, I've heard nothing to indicate anything other than we made a mistake as to the range of sentencing.

Then the second issue is, if you want to bring in a habitual offender, how do you do that? Do you start all over, or is there a process for the Court to allow that process to take place now, and to consider adding time to an otherwise illegal sentence?

**MR. DEPUY:**

Yes, Your Honor. And I'm not trying to be disingenuous with the Court. I don't know that I have the ability to file a habitual offender. I'm just saying to the Court, you know, before Your Honor would -- would decide to impose a sentence, I want to be able to look at the transcript, you know, and get that together.

**THE COURT:**

That's why I'm giving you that opportunity, --

**MR. DEPUY:**

Okay.

**THE COURT:**

-- and I'm telling you what the issues are, so that you can come back next month when I'm back on the Crim II bench in a couple of weeks --

**MR. DEPUY:**

Okay.

**THE COURT:**

-- and let's deal with this.

**MR. DEPUY:**

Okay, Your Honor.

**THE COURT:**

But those are the issues. One, I need -- I need you to take a position on was this sentence legal, or illegal. And if it was legal, you need to tell me why.

**MR. DEPUY:**

Okay, Your Honor.

**THE COURT:**

Because, you know, I got the feeling it was probably illegal to sentence him to 25 years if the statute only had a maximum of 10.

**MR. DEPUY:**

Yes, Your Honor. And, again, I don't know what the basis was for that 25 year --

**THE COURT:**

It's in here. Here's the record.

**MR. DEPUY:**

-- so . . .

**THE COURT:**

And if you want to --

**MR. DEPUY:**

I would like, just for the record, to request, officially, the transcript from that day for the sentencing --

**THE COURT:**

He's already done that. It's in the record.

**MR. DEPUY:**

The full transcript from the court reporter?

**THE COURT:**

Yes.

**MR. DEPUY:**

Oh, okay.

**THE COURT:**

So, let the record reflect I am providing you the record.

**MR. DEPUY:**

Yeah, I might be able to resolve it today, if I can look at it, Your Honor.

**THE COURT:**

I'm giving you the confidential record here in Open Court, so you can review it right now.

[Recess]

**MR. DEPUY:**

Your Honor, if I may call back up, for the record, Robert Leger, under Docket No 14444-07.

**THE COURT:**

All right.

**MR. DEPUY:**

He had filed a motion to correct an illegal sentence.

As we discussed before, Your Honor, the State's conceding that the imposition of the sentence under that range was illegal, was incorrect.

**THE COURT:**

All right.  So I'm going to correct that sentence, and it's now a 10-year sentence, correct?

**MR. DEPUY:**

It'd be zero to 10 would be the sentencing range, Your Honor.

**THE COURT:**

I would impose a 10-year sentence then as the new corrected sentence, as the maximum; especially since the defendant had agreed to 25 years.  So, the new sentence is 10 years.

And now the issue is whether or not the State can proceed with the habitual offender, either with that new sentence, or they want to pursue it whether we then vacate the old sentence and let him start over.

**MR. WILLIAMS:**

On the 10 years, Your Honor, would you add to the record that there would be credit for time served.

**THE COURT:**

Credit for time served. Now, the Prosecutor did show me the statutes that indicated they can do it even after a conviction. Did you show that to Mr. Williams?

**MR. DEPUY:**

Under 15:429.1, Subsection D. And just to clarify, I guess, for the record, Your Honor, this is -- you're imposing a sentence of 10 years without benefit, or just 10 years Department of Corrections?

**MR. REGGIE:**

What's the charge?

**MR. DEPUY:**

Sexual battery. 14:43.1, for sexual battery. The habitual offender's under 15:429.

**MR. REGGIE:**

It's gotta be with or without hard labor, and it's without benefits.

**MR. WILLIAMS:**

Your Honor, under the 43.1, shall be punished by imprisonment with or without hard labor, without benefit of parole, probation, or suspension of sentence for not more than 10 years. And I want to look -- look at any other part of the statute that may address --

**THE COURT:**

So it's without benefit.

**MR. WILLIAMS:**

That is correct, Your Honor, yes, sir.

**THE COURT:**

All right.

**MR. REGGIE:**

Ralph, we're going to take care of all that. I should have told you that. We need to finish this because we've got to get a -- we've got to get a correct sentence imposed first, and then we'll take care of that, all right. Thanks. I understand, and I need to make sure the Judge specifically says without those benefits, each of those three words, so the Third Circuit doesn't send it back.

**MR. WILLIAMS:**

And it's with or without hard labor.

**THE COURT:**

With or without hard labor, and without benefit of probation, parole, or suspension of sentence.

**MR. REGGIE:**

Thank you, Judge.

**THE COURT:**

And 10 years.

**MR. WILLIAMS:**

Okay. Now – and –

**THE COURT:**

That's the new sentence.

**MR. WILLIAMS:**

-- and it would -- you would have to make a distinction as to whether it is with or without; and, of course, my request is going to be without hard labor.

**THE COURT:**

I have to -- I have to declare whether it's with or without hard labor?

**MR. REGGIE:**

Yes, sir.

**MR. WILLIAMS:**

Yes, sir.

**THE COURT:**

What's the -- what's the argument on that?  I understand your argument, he's in a wheelchair.

**MR. WILLIAMS:**

Yes, sir.

**THE COURT:**

I don't mean to take words out of your mouth, but it's obvious.

**MR. WILLIAMS:**

Exactly, Judge.

**THE COURT:**

So, how does the State feel about that?  I don't know if he can do hard labor in a wheelchair.  If you can --

**MR. REGGIE:**

Sure you can, Judge, we do it all the time.  We did one in Judge Canaday's courtroom, they just sentenced a guy to 10 years.

**THE COURT:**

I'll order it with hard labor, to the extent that it can be done in a wheelchair.

**MR. DEPUY:**

And as indicated before, the State will look into whether it intends to file a habitual offender, Your Honor -- a bill of information for a habitual offender.

**THE COURT:**

I don't think you have to make that decision today.  Based on what I read, you can do it at any time, and then I'll -- if the State objects -- I mean, if the Defense objects to the State taking that action, then you can prepare whatever opposition, including the argument that

we have to start over.  You were sort of making that argument on the fly, but I --

**MR. WILLIAMS:**

Your Honor, I think the intent of the -- of coming back with an illegal sentence is to address the illegal sentence, not give the State a second chance at the bite of the apple.

**THE COURT:**

No, sir.  We've done that, Ralph.

**MR. WILLIAMS:**

Then I think that's -- I think that's as far as the Court can go.

**THE COURT:**

We're done as far as today, but the State believes -- and I saw the language in the statute that indicates at any time, even after sentencing, the State can come back with a habitual offense motion.

**MR. WILLIAMS:**

That's when it's done, Judge.  Generally, it's done once the person is convicted, of course.

**THE COURT:**

Well, I mean, I thought it was as a part of the sentencing.

**MR. WILLIAMS:**

Yes.

**THE COURT:**

Okay.  The statute says even after sentencing.  That's what he just showed me.

**MR. WILLIAMS:**

So the State gets a second bite at the apple with the --

**THE COURT:**

I'm just telling you what the law says.

**MR. WILLIAMS:**

-- with the sentence as illegal?

14

**THE COURT:**

We're past the illegality issue; we've cured that.

**MR. WILLIAMS:**

Right.

**THE COURT:**

We now have a legal sentence in place.

**MR. WILLIAMS:**

Right.

**THE COURT:**

The State wants to then come back on a habitual offender motion. Then I think -- based on what he just showed me, I think they can, but we're not going to deal with that right now. If they want to file it, they can file it, we're going to deal with it then. Okay.

**MR. WILLIAMS:**

Very well. I'll reserve all rights on behalf of Mr. Leger.

**THE COURT:**

You have all rights; you've got them.

In September 2010, the state filed the habitual offender bill, a hearing was held, the trial court found the defendant to be a second offender, and he was sentenced to twenty years. The defendant filed a Motion to Reconsider Sentence arguing his sentence was vindictive and excessive and the state breached the plea agreement. As noted above, after the trial court denied it as untimely, the defendant sought a writ of review with this court. This court held the issues presented in the motion to reconsider sentence should be raised on appeal.

In order to properly preserve the issue of prosecutorial vindictiveness, the defendant should have filed a motion to quash the habitual offender bill or objected on that basis at the habitual offender proceeding.

15

However, the defendant attempted to preserve it by filing the motion after the habitual offender sentence was imposed, and we will review the issue. *See State v. Aleman,* 01-743 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, *writ denied*, 02-481 (La. 3/14/03), 839 So.2d 26, where the court, in dicta, may have been suggesting this issue may be raised in a motion to reconsider sentence.

In *State v. Lewis*, 461 So.2d 1250 (La.App. 1 Cir. 1984), the court explained, in pertinent part:

> The leading case on prosecutorial vindictiveness is *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In *Blackledge*, the defendant was convicted of a misdemeanor by a North Carolina State court. After the defendant claimed his right to a trial *de novo* in a higher court, the prosecutor obtained a superseding indictment charging the defendant with a felony rather than a misdemeanor. Both the original misdemeanor (assault with a deadly weapon) and the subsequent felony (assault with a deadly weapon with intent to kill) charges were based on the same set of facts.

> In *Blackledge*, 94 S.Ct. at 2102-3, the Court stated:

>> A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. [citation omitted]

>> Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo.

> In applying *Blackledge*, the 5th Circuit Court of Appeals in *Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.1977*), cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), noted that there is a broad ambit to prosecutorial discretion, most of which is not subject to judicial control. However, the court went on to state that a prosecutor's discretion to reindict a defendant is constrained by the due process clause. Thus, once a prosecutor exercises his discretion to bring certain charges against a defendant neither he nor his successor may, without explanation, increase the number or severity of those charges in circumstances which suggest that the increase is in

16

retaliation for defendant's assertion of statutory or constitutional rights.

The court in *Hardwick* stated that a prosecutor could negate allegations of vindictiveness by proof of mistake or oversight in his initial action, a different approach to prosecutorial duty by a successor prosecutor, or public demand for prosecution on additional crimes allegedly committed, a list the court noted was illustrative rather than exhaustive.

The most recent statement of the law on prosecutorial vindictiveness by the 5th Circuit Court of Appeals appears in *U.S. v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir.1983) *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984). In that case, at 718 F.2d 1365, the court stated:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion.

The procedural history in the instant case is rather straight forward. Defendant was initially indicted by a grand jury for manslaughter. More than a year later he pled guilty to manslaughter and was then sentenced to twenty-one years at hard labor. Defendant then sought to withdraw his guilty plea. Ultimately, he appealed to the Louisiana Supreme Court, and his case was remanded to the trial court where he was allowed to withdraw his guilty plea. A second

17

indictment was then brought against defendant charging him with second degree murder.

The sequence of events as outlined above provides no "objective indication" as to the reason for the increase in the severity of the charges. Therefore, a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of evidence that events occurring since the time of the original charge decision altered the initial exercise of the prosecutor's discretion. *U.S. v. Krezdorn*, 718 F.2d at 1365.

We remand this case to the trial court for a hearing to allow the district attorney an opportunity to rebut the presumption of vindictiveness.

*Id*. at 1252-53.

In *United States v. Walker*, 514 F.Supp. 294 (E.D. La. 1981), the court held

as follows:

In a series of cases following [*North Carolina v.*] Pearce[, 395 U.S. 711, 89 S.Ct. 2072 (1979)] and Blackledge[ *v. Perry,417 U.S. 21, 94 S.Ct. 2098 (1974)]* , the Fifth Circuit has adopted a procedure for reviewing the government's exercise of its charging discretion to determine whether the government has legitimately exercised its authority in a constitutionally forbidden manner. Because this test was designed to cover the multitude of situations of which Pearce and Blackledge were only two particular instances, it is necessary to examine this rule.

2. The Fifth Circuit Rule

The rule in this circuit to assess the validity of the government's exercise of its charging authority has developed over a series of cases attempting to accommodate the state's constitutionally protected authority to prosecute Defendants for crime and the Defendant's constitutional right as set forth in the Blackledge case. *See Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.), on petition for rehearing and rehearing en banc, 561 F.2d 630 (1977) (per curiam), *cert. denied*, 434 U.S. 1049, 98 S. Ct. 897, 54 L. Ed. 2d 801 (1978); *Jackson v. Walker*, 585 F.2d 139 (5th Cir. 1978); *Miracle v. Estelle*, 592 F.2d 1269 (5th Cir. 1979); *United States v. Thomas*, 593 F.2d 615 (5th Cir.), modified on rehearing, 604 F.2d 450 (1979) (per curiam), appeal after remand, 617 F.2d 436 (1980); *United States v. Shaw*, 615 F.2d 251 (5th Cir. 1980) (per curiam). This test sets forth both the elements of proof of and defense to a claim of prosecutorial vindictiveness as well as the allocation of burdens and order of proof on this claim.

The Defendant bears the burden of establishing a prima facie case of prosecutorial vindictiveness. . . . The defendant's

18

establishment of a prima facie case of vindictiveness, in effect, creates a presumption that the government did act vindictively in bringing the second prosecution. The nature of this presumption varies according to the balance struck between the government's interests in enforcing the law and allocating wide discretion to individual prosecutor's to make charging decisions, and the Defendant's interests in being free from both actual vindictiveness and the apprehension of vindictiveness as the consequence of challenging his original conviction. Where the Defendant's interests outweigh the government's interests, the presumption created by the Defendant's establishment of a prima facie case is irrebuttable, and the Defendant is entitled to prevail based entirely upon his initial showing. This occurs where the government baldly escalates the original charge as in Blackledge. But where the balance weighs in favor of the government, as occurs where the escalation of the second charge was possible only because of events occurring between the first and second prosecutions or where the second charge accuses the Defendant of "different and distinct" offenses from the first charge, even despite a common origin in the same "spree of activity," the government is entitled to rebut the presumption of vindictiveness by going forward to demonstrate legitimate, nonvindictive reasons for the second charge. In these situations, if the government fails to come forward with any such reasons or fails adequately to rebut the presumption of vindictiveness, the Defendant is entitled to a judgment in his favor based upon the presumption created by his establishment of a prima facie case. But if the government successfully carries its burden of rebutting the presumption, the Defendant must then demonstrate actual vindictive motivation by the government to prevail on his claim. Alternatively, where the government institutes a second prosecution against a Defendant who has had his first conviction set aside but who cannot establish a prima facie case because the second charge carries a less severe penalty than the first, the Defendant may still challenge the second prosecution as vindictive but must demonstrate actual vindictive motivation by the government.

*Id*. at 313-15 (footnotes omitted).

In *State v. Tassin*, 08-752 (La.App. 3 Cir. 11/5/08), 998 So.2d 278, *writ denied*, 08-2909 (La. 9/18/09) 17 So.3d 385, the defendant challenged his habitual offender enhancement on the basis of prosecutorial vindictiveness, and it held, in pertinent part:

> The defendant bears the burden of proving prosecutorial vindictiveness. *State v. Darensbourg*, 06-572 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128. In determining whether there has been prosecutorial vindictiveness, the court examines the state's actions in the context of the entire proceeding. *Id*. If, to a

> reasonable mind, the filing of the habitual offender bill can only be explained by a desire to deter or punish the defendant's exercise of legal rights, the events in the case will create a presumption of vindictiveness. *Id.*
>
> The district attorney has the discretionary power to charge a defendant under the habitual offender law just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. *State v. Dorthey*, 623 So.2d 1276, 1279 (La.1993); LSA-C.Cr.P. art. 61. The district attorney's use of the habitual offender laws "provides an ancillary sentencing factor designed to serve important and legitimate societal purposes." *State v. Orange* [*State ex rel. State v. Orange*], 02-711 (La.App. 1 Cir. 4/11/03), 845 So.2d 570, 578, *writs denied*, 03-1352 (La.5/21/04), 874 So.2d 161, and 03-2195 (La.7/2/04), 877 So.2d 137. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness. *Id.*

*State v. Dauzart*, 07-15, p. 6 (La.App. 5 Cir. 5/15/07), 960 So.2d 1079, 1084-85.

> . . . .

> The Defendant argues that in either case, the choice to seek enhancement against him when it has not been done to other habitual offenders leads to arbitrary results based upon the decision of a sole prosecutor.
>
> The trial court did not rule on this claim at the habitual offender hearing or at the time of sentencing. However, the Defendant produced no evidence at the hearing or in brief to this court to suggest that the State filed the habitual offender bill of information for the purpose of deterring or punishing the exercise of his legal rights. Therefore, he failed to prove the State's pursuit of the habitual offender bill against him was vindictive. Accordingly, this assignment of error lacks merit.

*Id.* at 293.

In *State v. Wilson,* 44,586 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, *writ denied*, 09-2655 (La. 1/28/11), 56 So.3d 973, the court found no vindictiveness, and it held in pertinent part:

> A presumption of vindictive prosecution arises if the habitual offender bill can be explained only by a desire to punish or deter the exercise of legal rights. *See State v. Tassin*, 2008-752 (La.App. 3d Cir.11/5/08), 998 So.2d 278, *writ denied*, 2008-2909 (La.9/18/09), 17

So.3d 385. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness.

If the prosecutor's conduct is equally attributable to legitimate reasons, the defendant must prove actual vindictiveness. A mere opportunity for vindictiveness does not suffice. *State v. Heard*, 36,191 (La.App. 2d Cir.7/17/02), 823 So.2d 454. A defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. In that regard, the court will examine the state's actions in the context of the entire proceedings.

*Discussion*

The defendant argues that the state's choice to charge him as a habitual offender amounted to improper prosecutorial vindictiveness. He claims the habitual offender bill of information was filed solely due to the state's suspicions that the defendant was involved in another unprosecuted crime many years before this present offense. The defendant argues that the trial court erred in denying his motion to compel answers to a bill of particulars regarding the motives for the filing of the habitual offender bill of information and in failing to grant his motion to quash the habitual offender bill of information due to prosecutorial vindictiveness. The defendant has failed to carry his burden of proof on this issue.

There is no showing of a presumption of vindictiveness because the decision in this case to file a habitual offender bill of information was not explained only by a desire to punish or deter the exercise of legal rights. Further, the record shows that the choice to charge the defendant as a habitual offender was based upon legitimate reasons. The defendant had prior convictions for attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business, and possession of stolen things. The Habitual Offender Law only provides for four prior felonies. Therefore, the defendant was adjudicated a fourth felony offender.

In addition, the defendant had an extensive criminal record containing many more arrests and convictions not used in adjudicating him a fourth felony offender. The record shows that the defendant was not only a proven habitual felony offender, but had a criminal history spanning 30 years. Due to the defendant's proven record of recidivism, the state had legitimate reasons to file the habitual offender bill of information in this case.

The defendant has also failed to show actual vindictiveness. He makes the bare allegation that the habitual offender bill of information was filed solely due to his suspected involvement in a prior offense for which he had not been prosecuted. The defendant offered no evidence to prove this allegation. He made the bare allegation that he has been treated differently from similarly situated defendants, but has

21

offered no proof of this claim. Examining the state's actions in the context of the entire proceedings, particularly in light of the fact that the defendant has a significant history of prior felonies, there is no showing of actual prosecutorial vindictiveness in this case. The trial court did not err in denying the motion to quash the bill of information or in failing to compel answers to the bill of particulars in this matter.

*Id*. at 220-21 (citations omitted).

Although not directly on point because it pertains to whether or not the trial court increased the defendant's sentence due to vindictiveness, *State v. Merrell*, 511 So.2d 1234 (La.App. 2 Cir. 1987), lends guidance on this issue. In *Merrel*, the court held, in pertinent part:

> We conclude the trial judge erred in increasing defendant's original sentence by ordering it to be served consecutive to any other sentence because the trial judge failed to articulate, for the record, any conduct on the part of defendant occurring subsequent to the original sentencing proceeding which would justify increasing the original sentence. There can be no doubt that the trial judge increased defendant's original (legal) sentence which should have been twelve years upon resentencing, although he agreed defendant's original sentence had been improperly enhanced by six years. Defendant's original eighteen year sentence was ordered to run concurrently with his prior six year sentence and the twelve year sentence imposed upon resentencing, was ordered to run consecutive to any prior sentence. The trial judge, therefore, in resentencing defendant to serve a twelve year hard labor sentence to be served consecutive to his prior six year sentence, has reimposed, for all practical purposes, a prison term equal in length to the original eighteen year illegal sentence.
>
> The trial judge, in resentencing defendant, relied upon the same factual information considered by the trial judge who imposed the original illegal sentence. Increasing defendant's original sentence, without new and additional justification, therefore, violated defendant's due process rights because it creates the appearance of vindictiveness against defendant for successfully attacking his sentencing. The sentence must be vacated and the case remanded for resentencing.

*Id*. at 1236-37 (citations omitted).

The present case is distinguishable from *Tassin* and *Wilson* and more in line with *Lewis* and *Merrel*. The record before this court indicates that over two years had elapsed between the time the defendant entered a guilty plea and was

sentenced to twenty-five years and the time the state filed the habitual offender bill. Although at the guilty plea hearing, the state informed the trial court that the defendant had been convicted of murder in Texas and was on parole, the state did not seek to enhance the defendant's sentence under the habitual offender statutes at the guilty plea proceeding. In fact, the state, along with the defendant, recommended the defendant be sentenced to twenty-five years. The first mention of a habitual offender bill being filed was at the motion to correct illegal sentence. The record does not reflect an "objective indication" as to the reason for seeking enhancement of the sentence. Therefore, a presumption of vindictiveness applies which cannot be overcome unless the state proves by a preponderance of evidence that events occurring since the time of the original decision altered the initial exercise of the state's discretion. Accordingly, this court is remanding this case to the trial court for a hearing to allow the state an opportunity to rebut the presumption of vindictiveness.

The trial court is instructed to (1) conduct an evidentiary hearing within thirty days and (2) lodge an appellate record, containing the transcript of the hearing, within fifteen days of the hearing. *See State v. Clark*, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738, *writ granted and case remanded in light of supplemental filing*, 98-1180 (La. 9/25/98), 726 So.2d 2, and *State v. Fuslier*, 06-1438 (La.App. 3 Cir. 4/4/07), 954 So.2d 866. The remaining issues are pretermitted pending the evidentiary hearing and lodging of the new record in this court.

## CONCLUSION

The matter is hereby remanded to the trial court for an evidentiary hearing on the issue of prosecutorial vindictiveness in accordance with the opinion. The evidentiary hearing is to be held within thirty days of issuance of this opinion.

23

Following the hearing, the trial court shall lodge an appellate record containing the transcript of the hearing, within fifteen days of the hearing.

The remaining issues are pretermitted.

**REMANDED WITH INSTRUCTIONS.**