STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-459


STATE OF LOUISIANA

VERSUS

MARVIN DIXON


**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 90481 AM
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Marvin Dixon**

**Asa Allen Skinner**
**District Attorney, Thirtieth Judicial District Court**
**Terry Wayne Lambright**
**Assistant District Attorney**
 **P. O. Box 1188**
**Leesville, LA 71446-1188**
**(337) 239-6557**
**COUNSEL FOR APPELLEE:**
   **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Marvin Dixon, has previously sought review by this court of a related matter. In connection with an earlier guilty plea to one count of attempted aggravated crime against nature, we vacated Defendant's illegally excessive sentence and remanded the case for resentencing. *State v. Dixon*, 16-132 (La.App. 3 Cir. 9/28/16) (unpublished opinion).

On December 20, 2016, the State filed a bill of information charging Defendant with two counts of aggravated incest and one count of aggravated crime against nature. On March 10, 2017, Defendant filed a motion to quash, which was denied on March 15, 2017. On the same date, he entered an *Alford* plea[1] to one count of aggravated incest, a violation of La.R.S. 14:78.1.[2] He waived sentencing delays and received a sentence of twenty years at hard labor. The trial court dismissed the other two counts pursuant to a State motion.

Defendant appeals and assigns a single error, but breaks it into three main arguments. For the following reasons, we affirm the trial court's denial of Defendant's motion to quash, and we affirm Defendant's sentence.

## FACTS

At the plea hearing, the State recited the following facts, without objection by Defendant:

> Your Honor, this offense happened between January 1st, 2012 and June 1st, 2012. The victim's date of birth is April 5th, 2000, making her between eleven and twelve years of age at all times herein, and the victim was related to Mr. Dixon as his granddaughter. And at times when she was exposed to him and in his presence, he did commit a sexual battery upon her, also indecent behavior with juveniles, and molestation of a juvenile in that he would lewdly fondle and touch her with the intent to arouse and satisfy his sexual desires. Specifically, the

---

[1] In an *Alford* plea, the defendant does not explicitly admit guilt. *North Carolina v. Alfold,* 400 U.S. 25, 91 S.Ct. 160 (1970).

[2] This statute was repealed in 2014 when it was subsumed in the 2014 revision of La.R.S. 14:89.1.

behavior that he did with this victim, who's [sic] initials are E.D., was touch her breast, vagina, and buttocks with his hand. In support of that I'd like to offer, file, and introduce the documents filed in discovery in this matter and the actual filing of discovery relates to 87,680, but is also related to the new docket number, 90,481. And I would like to rely on those as part of my factual basis, but I would submit to the Court that were this case to go to trial, that is what the State would prove at trial.

## ASSIGNMENT OF ERROR

Defendant assigns a single error, but divides it into three major arguments. His general argument is that the trial court erred by denying his motion to quash.

*Double Jeopardy*

Defendant first argues the current case was a second prosecution which violated the constitutional protection against double jeopardy. Although double jeopardy was mentioned in the written motion, the State observes that Defendant did not argue it at the March 15 hearing. However, we will address the argument because double jeopardy can be raised at any time. La.Code Crim.P. art. 594. Further, a double jeopardy error would require dismissal of the conviction.

As the State points out, Defendant pled guilty to a sex offense involving the victim, E.D.[3] In the prior case, he pled to a sex offense committed against D.D.[4] The present appeal and the previous appeal address two pleas to two different offenses against two different victims. Thus, it is clear that double jeopardy is not implicated in the guilty plea. To the extent Defendant's argument raises concerns regarding the bill of information, any argument regarding the bill is moot given the ultimate plea.

---

[3]The victim's initials are used throughout pursuant to La.R.S. 46:1844(W).

[4]Documents from the prior appeal under docket number 16-132 are included as an exhibit to the current record.

*Plea Agreement*

Defendant next argues that the present prosecution violates the plea agreement from the earlier case. In the earlier case, the State agreed to dismiss two counts: one count of aggravated crime against nature, which was alleged to have been committed against D.D. between July 11, 2010 and February 14, 2015, and another count of aggravated crime against nature, alleged to have been committed against E.D. between May 1, 2012 and September 30, 2012. The dismissal of the latter count appears problematic in the context of the current argument because, as already noted, Defendant entered an *Alford* plea to a sex offense, aggravated incest, against E.D.

Thus, Defendant contends he was prosecuted for conduct that was dismissed pursuant to the plea agreement in the earlier case. It is true that both bills alleged that he committed improper sexual acts against the victim: "sexual battery, indecent behavior with juveniles and molestation of a juvenile." The second bill also charged that Defendant "did lewdly fondle and touch" E.D. The former bill alleged the acts occurred between May 1, 2012 and September 30, 2012; the present bill alleged acts between January 1, 2012 and June 1, 2012. Thus, both bills alleged the same general sex acts against the same victim and both alleged that at least some of the acts occurred in May and June of 2012.

Although the record is difficult to decipher, after a careful analysis of the facts and circumstances surrounding the pleas, we find Defendant is not being prosecuted again for conduct dismissed as part of the plea agreement in the previous case. Rather, as discussed below, the second bill was brought to correct errors that resulted from all parties relying on an incorrect version of a statute.

*Vindictive Prosecution*

Defendant's third and final argument is that the current prosecution violates constitutional due process protections because the State is punishing him for his

3

success in his earlier appeal. As he points out, vindictive prosecution is prohibited by *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969). This court has discussed *Pearce*:

> However, the fact that he received harsher treatment, i.e., being charged with the previously dismissed crimes after he successfully appealed his prior guilty pleas and received a longer sentence, requires a determination as to whether he has suffered a deprivation of due process. *Id*. (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

> The *Pearce* court explained the due process issue raised, as such:

>> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.

> *Pearce*, 395 U.S. at 725, 89 S.Ct. 2089.

*State v. Cloud*, 06-877, p. 3 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, 268-69, *writ denied*, 07-86 (La. 9/21/07), 964 So.2d 331.

In *State v. Leger*, 11-1127, pp. 16-19, 23 (La.App. 3 Cir. 5/2/12), 92 So.3d 975, 984-86, 989, a panel of this court summarized the law pertaining to vindictive prosecution:

> In *State v. Lewis*, 461 So.2d 1250 (La.App. 1 Cir.1984), the court explained, in pertinent part:

>> The leading case on prosecutorial vindictiveness is *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In *Blackledge*, the defendant was convicted of a misdemeanor by a North Carolina State court. After the defendant claimed his right to a trial de novo in a higher court, the prosecutor obtained a superseding indictment charging the defendant with a felony rather than a misdemeanor. Both the original misdemeanor (assault with a deadly weapon) and the subsequent felony (assault with a deadly weapon with intent to kill) charges were based on the same set of facts.

4

In *Blackledge*, 94 S.Ct. at 2102-3, the Court stated:

> A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. [citation omitted]

> Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*.

In applying *Blackledge*, the 5th Circuit Court of Appeals in *Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), noted that there is a broad ambit to prosecutorial discretion, most of which is not subject to judicial control. However, the court went on to state that a prosecutor's discretion to reindict a defendant is constrained by the due process clause. Thus, once a prosecutor exercises his discretion to bring certain charges against a defendant neither he nor his successor may, without explanation, increase the number or severity of those charges in circumstances which suggest that the increase is in retaliation for defendant's assertion of statutory or constitutional rights.

The court in *Hardwick* stated that a prosecutor could negate allegations of vindictiveness by proof of mistake or oversight in his initial action, a different approach to prosecutorial duty by a successor prosecutor, or public demand for prosecution on additional crimes allegedly committed [sic], a list the court noted was illustrative rather than exhaustive.

The most recent statement of the law on prosecutorial vindictiveness by the 5th Circuit Court of Appeals appears in *U.S. v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir.1983) *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984). In that case, at 718 F.2d at 1365, the court stated:

5

If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutors discretion.

The procedural history in the instant case is rather straight forward. Defendant was initially indicted by a grand jury for manslaughter. More than a year later he pled guilty to manslaughter and was then sentenced to twenty-one years at hard labor. Defendant then sought to withdraw his guilty plea. Ultimately, he appealed to the Louisiana Supreme Court, and his case was remanded to the trial court where he was allowed to withdraw his guilty plea. A second indictment was then brought against defendant charging him with second degree murder.

The sequence of events as outlined above provides no "objective indication" as to the reason for the increase in the severity of the charges. Therefore, a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of evidence that events occurring since the time of the original charge

decision altered the initial exercise of the prosecutor's discretion. *U.S. v. Krezdorn*, 718 F.2d at 1365.

> We remand this case to the trial court for a hearing to allow the district attorney an opportunity to rebut the presumption of vindictiveness.

*Id.* at 1252-53.

In *United States v. Walker*, 514 F.Supp. 294 (E.D.La.1981), the court held as follows:

> In a series of cases following [*North Carolina v.*] *Pearce*[, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1979) ] and *Blackledge*[ *v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ], the Fifth Circuit has adopted a procedure for reviewing the government's exercise of its charging discretion to determine whether the government has legitimately exercised its authority in a constitutionally forbidden manner. Because this test was designed to cover the multitude of situations of which Pearce and Blackledge were only two particular instances, it is necessary to examine this rule.

> 2. The Fifth Circuit Rule

> The rule in this circuit to assess the validity of the government's exercise of its charging authority has developed over a series of cases attempting to accommodate the state's constitutionally protected authority to prosecute Defendants for crime and the Defendant's constitutional right as set forth in the Blackledge case. *See Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.), on petition for rehearing and rehearing en banc, 561 F.2d 630 (1977) (per curiam), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); *Jackson v. Walker*, 585 F.2d 139 (5th Cir.1978); *Miracle v. Estelle*, 592 F.2d 1269 (5th Cir.1979); *United States v. Thomas*, 593 F.2d 615 (5th Cir.), modified on rehearing, 604 F.2d 450 (1979) (per curiam), appeal after remand, 617 F.2d 436 (1980); *United States v. Shaw*, 615 F.2d 251 (5th Cir.1980) (per curiam). This test sets forth both the elements of proof of and defense to a claim of prosecutorial vindictiveness as well as the allocation of burdens and order of proof on this claim.

> The Defendant bears the burden of establishing a prima facie case of prosecutorial vindictiveness . . . . The defendant's establishment of a prima facie case of vindictiveness, in effect, creates a presumption that the government did act vindictively in bringing the second

7

prosecution. The nature of this presumption varies according to the balance struck between the government's interests in enforcing the law and allocating wide discretion to individual prosecutor's to make charging decisions, and the Defendant's interests in being free from both actual vindictiveness and the apprehension of vindictiveness as the consequence of challenging his original conviction. Where the Defendant's interests outweigh the government's interests, the presumption created by the Defendant's establishment of a prima facie case is irrebuttable, and the Defendant is entitled to prevail based entirely upon his initial showing. This occurs where the government baldly escalates the original charge as in Blackledge. But where the balance weighs in favor of the government, as occurs where the escalation of the second charge was possible only because of events occurring between the first and second prosecutions or where the second charge accuses the Defendant of "different and distinct" offenses from the first charge, even despite a common origin in the same "spree of activity," the government is entitled to rebut the presumption of vindictiveness by going forward to demonstrate legitimate, nonvindictive reasons for the second charge. In these situations, if the government fails to come forward with any such reasons or fails adequately to rebut the presumption of vindictiveness, the Defendant is entitled to a judgment in his favor based upon the presumption created by his establishment of a prima facie case. But if the government successfully carries its burden of rebutting the presumption, the Defendant must then demonstrate actual vindictive motivation by the government to prevail on his claim. Alternatively, where the government institutes a second prosecution against a Defendant who has had his first conviction set aside but who cannot establish a prima facie case because the second charge carries a less severe penalty than the first, the Defendant may still challenge the second prosecution as vindictive but must demonstrate actual vindictive motivation by the government.

*Id.* at 313-15 (footnotes omitted).

. . . .

The record does not reflect an "objective indication" as to the reason for seeking enhancement of the sentence. Therefore, a presumption of vindictiveness applies which cannot be overcome unless the state proves by a preponderance of evidence that events occurring since the time of the original decision altered the initial exercise of the state's discretion. Accordingly, this court is remanding this case to the trial

court for a hearing to allow the state an opportunity to rebut the presumption of vindictiveness.

In this case, there was no escalation of the overall sentence that Defendant agreed to in his first plea deal. In fact, his sentence was reduced from the-agreed-upon sentence of thirty years to a total sentence of twenty-seven-and-a-half years. Thus, there was no escalation of charges for the purpose of an increased sentence, and thus no evidence of a vindictive motivation. The crime of aggravated incest (La.R.S. 14:78.1(A) and (D)(2)) involving E.D., as charged in the second bill, carried the same sentence range as the cited charge for aggravated crime against nature (La.R.S. 14:89.1(A)(2) and (C)(2) involving E.D. in the first bill. Both were felonies, and both carried prison sentences of twenty-five to ninety-nine years. A mistake was made in the first bill however, because La.R.S. 14:89.1(C) did not exist in 2012; it was added in 2014, at which time La.R.S. 14:78.1 (aggravated incest) was repealed and folded into La.R.S. 14:89.1 (aggravated crime against nature). But the defense attorney, the district attorney, and two judges all thought the statute was properly cited. This was the same statute pled to in the first conviction involving D.D., and the same mistake that led to the first appeal and remand. The original intent in the first conviction was to sentence Defendant to thirty years for all of his crimes; and that was never exceeded as a result of the second conviction, which involved a different victim. The basis for the *Pearce* presumption does not exist in this case.

Further, where there are multiple offenses and interdependent sentences, adherence to an original sentencing intent and scheme of punishment is a legitimate reason that negates a claim of vindictiveness. *State v. Neville*, 572 So.2d 1161, (La.App. 1 Cir. 1990), *writ denied*, 576 So.2d 46 (La.1990). There, in addressing double jeopardy and vindictiveness, the court found:

> In a case involving multiple convictions, a trial judge often imposes interdependent sentences according to a scheme of punishment for a defendant's conduct as a whole. When raising a double jeopardy claim, a defendant is effectively contesting the entire scheme of punishment. A finding that the convictions violate double jeopardy disrupts the carefully crafted, interdependent sentences imposed by the trial judge.

*Id*. at 1164.

In *Neville*, where the defendant was sentenced to consecutive terms of ten and fifteen years on two felony counts, but one was dropped due to double jeopardy, the court found that the new thirty-four-year sentence on the remaining count did not invoke the *Pearce* presumption of vindictiveness. The *Neville* court stated that the judge's intent was to impose a sentence which would be consistent with the original sentencing judge's intent that the defendant serve thirty-five years. The defendant initially was sentenced to twenty and fifteen years consecutively. The thirty-four-year sentence he received on resentencing is

> "in accordance with the original scheme of punishment" and is "no more severe than the defendant's original composite sentence." *State ex rel. Adams*, 558 So.2d at 554. Thus, due process was not violated and defendant's claim is without merit.

*Id*. at 1165-66.

While factually different, the court in *United States v. Cataldo*, 832 F.2d 869 (5th Cir. 1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1577 (1988), reasoned that sentencing under an incorrect statutory provision during the original sentencing could justify a more severe sentence in keeping with the original sentencing scheme without invoking the presumption of vindictiveness.

Here, the trial court, in originally sentencing Defendant to thirty years for the crime of aggravated crime against nature for his conduct against D.D. in the first

bill, intended to cover Defendant's conduct as a whole against both victims, because he referenced the counseling that the girls would have to undergo.

It is well-settled that a prosecutor is free to file new charges after a dismissal if he or she files within the timeframes of La.Code Crim.P. art. 576.[5] *See State v. Gray*, 16-687 (La. 3/15/17), 218 So.3d 40. In this case, the felony prosecution had to be brought within six years from the date the offense was committed, pursuant to La.Code Crim.P. art. 572(A)(1). The aggravated incest against E.D. was committed in 2012, and the bill of information was filed in 2016. Thus, the 2016 bill was timely.

However, Defendant's argument is not based upon timeliness of the second bill. Rather, he argues that the earlier 2015 count for aggravated crime against nature involving E.D. in 2012 was dismissed pursuant to a plea agreement, and the district attorney's filing of the second bill charging aggravated incest against E.D. in 2012 was technically for the same offense and, therefore, violated the earlier plea agreement. Under certain circumstances, plea agreements are dischargeable.

In *United States v. Moulder*, 97-10417 and 97-10336, 141 F.3d 568 (5th Cir. 1998), the court held that the government's obligations under plea agreements

---

[5] Louisiana Code Criminal Procedure Article 576 provides:

When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.

A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.

Under La.Code Crim.P. Article 578, trial must be commenced within two years from the date of institution of the prosecution.

11

became dischargeable under the frustration of purpose doctrine and that reinstatement of the dismissed charges did not support a prosecutorial vindictiveness claim. The court in *Moulder* stated that the defendant should have known that having his conviction overturned would motivate the prosecutor to refile charges. While we do not suggest that *Moulder* be applied in all cases, the reasoning renders it more than persuasive under the facts of this case. Citing its approval of *United States v. Bunner,* 134 F.3d 1000 (10th Cir. 1998), the court defined the frustration of purpose doctrine, which is based upon contract law:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language of the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 265 (1981).

> The comments to this section provide that "the purpose that is frustrated must have been a principal purpose of that party in making the contract.... The object must be so completely the basis of the contract that, as both parties understand, *without it the transaction would make little sense.*" RESTATEMENT (SECOND) OF CONTRACTS § 265 cmt. a (1981) (emphasis added).

> "The application of contract law to plea agreements is premised on 'the notion that the negotiated guilty plea represents a bargained-for quid pro quo.'" *United States v. Asset,* 990 F.2d 208, 215 (5th Cir.1993) (quoting *United States v. Escamilla,* 975 F.2d 568, 570 (9th Cir.1992)). In this regard, the underlying purpose of the plea agreement in issue was to "avoid the uncertainty of a jury verdict ... [and] to ensure that the [defendants] served time for violating § 924(c)". *Bunner,* 134 F.3d at 1004–05. And, needless to say, "[a] basic assumption underlying the parties' purposes was their belief that the conduct ... pled guilty to amounted to a violation of § 924(c)". *Id.* at 1005.

> But, the parties' assumptions and obligations were altered by *Bailey* and the subsequent successful § 2255 challenges. As a result of those events "the underlying purpose of the [plea] agreement [was] frustrated and the basis of the government's bargain [was] destroyed. Thus, under the frustration of purpose doctrine, the government's plea agreement obligations became dischargeable". *Bunner,* 134 F.3d at 1005. Accordingly, it was free to reinstate the drug charges.

*Moulder*, 141 F.3d at 571-72.

Here, Defendant signed a plea agreement on October 7, 2015, pleading guilty to attempted aggravated crime against nature. The plea agreement stated the following:

> I understand the elements and the nature of the charge and that it is a felony offense which could result in a penitentiary sentence if I am convicted thereof. I am aware of the minimum and maximum sentences provided by law after having the same explained to me by my attorney.

The charge shown on the bill of information cited the aggravated crime against Nature provision as La.R.S.14:89.1(A)(2) and (C)(2), which carried a sentence of twenty-five to ninety-nine years. And, as shown in the sentencing transcript, all parties, judges, and counsel, including defense counsel Mr. Williams, thought the lesser offense of attempt to commit that crime carried a sentence of up to forty-nine-and-a-half years. Thus, Defendant entered the agreement under those conditions, and the sentence was an essential part of the plea agreement.

Further, the plea agreement does not state that other charges will not be filed. In fact, it states:

> I further understand that should I plead guilty or be convicted of a similar offense in the future the penalty which could be imposed may be greater or the grade of the offense may be greater as a consequence of this guilty plea.

13

At sentencing, after discussing the rape and oral sex with one child and molestation of the other, the trial court gave its reasons for the thirty-year sentence:

> Other factors taken into consideration by this Court in the determination of sentence include the offender's conduct during the commission of this offense manifested a deliberate cruelty to the victims who are the defendant's granddaughters. Also taken into consideration, this offender knew, or should have known, that the victims were particularly vulnerable or incapable of resistance due to their youth, specifically as the facts include one of these children were eleven years of age at the time of the commission of this offense. Further, this offense has resulted in significant permanent injury to the victims and the victims' family.
>
> . . . .
>
> The Court does not feel that this defendant is likely to respond to probationary treatment, that there is an undue risk that during the period of suspended sentence or probation, that this defendant would commit another crime. It is the -- the defendant -- or the Court feels that this defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by commitment to an institution. A lesser sentence will deprecate the seriousness of the defendant's offense.

Defendant never denied the charges. In open court after sentencing, he merely apologized and said "this is what too much drinking can do to you."

A seven-and-a-half-year sentence is not what was bargained for in this case. It is not what the prosecutor or the trial court intended, and it is not what Defendant himself agreed to or anticipated when he took the plea bargain. Thus, the purpose of the plea bargain and sentence were frustrated. The filing of new charges and the second plea agreement and sentence for the abuse of the other victim were all in keeping with the original sentencing scheme. This is particularly true where both plea agreements and both sentences for two different crimes resulted in a total of twenty-seven-and-a-half years, which is two-and-a-half years less than the original sentencing scheme of thirty years.

**DECREE**

The judgment of the trial court denying Defendant's motion to quash is affirmed, and his sentence is affirmed.

**AFFIRMED.**